**960-15**   NO: 12-14-00186-CR

RECEIVED IN
COURT OF CRIMINAL APPEALS
OCT 02 2015
Abel Acosta, Clerk

IN THE

COURT OF APPEALS

FOR THE FIFTH DISTRICT OF TEXAS

ORIGINAL

AT DALLAS

---

TOMMIE WILLIAMS - APPELLANT

V.

THE STATE OF TEXAS - APPELLEE

---

CAUSE NUMBER: 12-14-00186-CR

FILED IN
COURT OF CRIMINAL APPEALS
OCT 02 2015
Abel Acosta, Clerk

ON APPEAL FROM CAUSE NUMBER: F-12-24893
282ND DISTRICT COURT
OF DALLAS COUNTY, TEXAS

---

PETITION FOR DISCRETIONARY REVIEW BRIEF

---

TOMMIE WILLIAMS
T.D.C.J. # 1937981
FRENCH ROBERTSON UNIT
12071 FM 3522
ABILENE, TX. 79601

APPELLANT REQUESTS ORAL ARGUMENT
PURSUANT TO TEX. R.A.P.P.   P.397

c/c COPY WILLIAMS
PETITION FOR DISCRETIONARY REVIEW
PAGE 1 OF 59

## THE COURT

HONORABLE ANDY CHATHAM, JUDGE
282ND DISTRICT COURT
DALLAS COUNTY, TEXAS

## PARTIES

TOMMIE WILLIAMS ............................................ APPELLANT

THE STATE OF TEXAS ........................................ STATE

## COUNSEL

MS. MESSINA MADSON
ASSISTANT DISTRICT ATTORNEY
FRANK CROWLEY COURTS BUILDING ........ ATTORNEY FOR THE STATE
133. N. RIVERFRONT BOULEVARD
DALLAS, TEXAS 75207

MS. KELLY BENAVIDES
ASSISTANT DISTRICT ATTORNEY
133. N. RIVERFRONT BOULEVARD ........ ATTORNEY FOR THE STATE
DALLAS, TEXAS 75207

MS. REBECCA OTT
ASSISTANT DISTRICT ATTORNEY ........ ATTORNEY FOR THE STATE

MR. ANTHONY EILAND
137 PITTSBURG STREET. SUITE A
DALLAS, TEXAS 75207

ATTORNEY FOR
DEFENDANT

JACOB ZACHARIAH
1130 N. WESTMORELAND
DESOTO, TEXAS

ATTORNEY FOR
DEFENDANT

MR. ALLAN FISHBURN
211 NORTH RECORD
SUITE 450

ATTORNEY FOR
APPELLANT

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES     2

TABLE OF CONTENTS     4

INDEX OF AUTHORITIES     6

STATEMENT OF THE CASE     9

ISSUES PRESENTED     11

STATEMENT OF FACTS     12

POINT OF ERROR NUMBER ONE

THE EVIDENCE IS INSUFFICIENT TO
PROVE ENTRY WITHOUT THE OWNER'S
EFFECTIVE CONSENT     43

SUMMARY OF ARGUMENT     43

ARGUMENT     43

POINT OF ERROR NUMBER TWO

THE TRIAL COURT ERRED BY OVERRULING
APPELLANT'S OBJECTION TO THE ADMISSION
OF A SURREPTITIOUS TELEPHONE CALL PLACED
BY THE COMPLAINING WITNESS TO APPELLANT
AT THE DIRECTION OF THE POLICE     46

SUMMARY OF ARGUMENT     46

ARGUMENT     46

POINT OF ERROR NUMBER THREE

THE TRIAL COURT ERRED BY FAILING
TO LIMIT THE DEFINITIONS OF INTENTIONALLY
AND KNOWINGLY TO THE RELEVANT CONDUCT
ELEMENTS OF THE UNDERLYING OFFENSE.          51

    SUMMARY OF ARGUMENT                     51

    ARGUMENT                                52

POINT OF ERROR NUMBER FOUR

THE TRIAL COURT LACKED JURISDICTION
TO HEAR THE INSTANT CASE AND RENDER
A JUDGEMENT BECAUSE THE CASE WAS NOT
TRANSFERRED TO ITS DOCKET                     56

    SUMMARY OF ARGUMENT                     56
    ARGUMENT                                56

PRAYER                                        58

CERTIFICATE OF COMPLIANCE                      59

CERTIFICATE OF SERVICE                         59.

# INDEX OF AUTHORITIES

## CASES

ALMANZA V. STATE, 686 S.W. 2d 157
(TEX. CRIM. APP. 1994) ............................ 55

ARIZONA V. FULMINATE, 499 U.S. 279 (199) ... 50

ASH V. STATE, 930 S.W. 2d 192
(TEX. APP.- DALLAS 1996) ....................... 53, 55

COOK V. STATE, 884 S.W. 2d 485
(TEX. CRIM. APP. 1994) ............................ 53

EXPARTE SEIDEL, 39 S.W. 3RD 221
(TEX. CRIM. APP. 2001) ............................ 57

GARCIA V. STATE, 901 S.W. 2d 731
(TEX. APP.- HOUSTON [14TH DIST.] 1995) ... 58

HARRIS V. STATE, 790 S.W. 2d 568
(TEX. CRIM. AP. 1989) ............................ 50

HEATH V. STATE, 817 S.W. 2d 335
(TEX. CRIM. APP. 1991) ............................ 57

HOANG V. STATE, 872 S.W. 2d 694
(TEX. CRIM. APP. 1993) ............................ 57

HUFFMAN V. STATE, 267 S.W. 3RD 902
(TEX. CRIM. APP. 2008) ............................ 54

HUGHES V. STATE, 897 S.W. 20 285
(TEX. CRIM. APP. 1994) ............................ 55

JACKSON V. VIRGINIA, 443 U.S. 307 (1979) ... 45

JONES V. STATE, 114 S.W. 3RD 766
(TEX. CRIM. APP. 2003)                                    50

MARIN V. STATE, 851 S.W. 2D 275                           58
(TEX. CRIM. APP. 1993)

MILLS V. STATE, 742 S.W. 2D 832
(TEX. CRIM. APP. — DALLAS 1987)                           58

PATRICK V. STATE, 906 S.W. 2D 481                         55
(TEX. CRIM. APP. 1995)

RICHARDSON V. STATE, 888 S.W. 2D 822                      54
(TEX. CRIM. APP. 1994)

ROTHERY V. GILLESPIE COUNTY, 554                          48
U.S. 1991 (2008)

TEXAS V. COBB, 532 U.S. 162  (2001)                       48

THOMPSON V. STATE, 93 S.W. 2D 16                          48
(TEX. CRIM. APP. 2003)

THOMPSON V. STATE, 108 S.W. 3RD 269                       49
(TEX. CRIM. APP. (2003)

        CONSTITUTIONS
TEX. CONST. ART. V SECTION 12 (B)                         56

        STATUTES
TEX. CODE CRIM. PROC. ANN. ARTICLE 4.16                   57

TEX. PENAL CODE ANN. SECTION 6.03                         03

TEX. CODE CRIM. PROC. ANN. ARTICLE 12.06                  56

TEX. PENAL CODE ANN. SECTION 30.02      44, 47

TEX. PENAL CODE ANN. SECTION 30.02 (A)(3)      53

TEX. CODE CRIM. PROC. ANN. ~~SECTION~~ ARTICLE 32.01      56

TEX. CODE CRIM. PROC. ANN. ARTICLE 37.07      49

TEX. CODE CRIM. PROC. ANN. ARTICLE 38.37      49

TEX. GOVT. CODE ANN. SECTION 24.003      57

RULES

TEX. R. A. PP. PROC. 44.2 (A)      50

TEX. R. EVID. 404 (B)      49

# INDEX OF AUTHORITIES

CASES

<u>ALMANZA V. STATE</u>, 686 S.W. 2d 157
(TEX. CRIM. APP. 1994)                                    55

<u>ARIZONA V. FULMINATE</u>, 499 U.S. 279 (1991)          50

<u>ASH V. STATE</u>, 884 S.W. 192
(TEX. APP. - DALLAS 1996)                                53, 55

COOK V STATE.

# STATEMENT OF THE CASE

APPELLANT WAS CHARGED WITH BURGLARY OF A BUILDING BY AN INDICTMENT WHICH READS:

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS: THE GRAND JURY OF DALLAS COUNTY, STATE OF TEXAS, DULY ORGANIZED AT THE JANUARY TERM. A.D., 2013 OF THE CRIMINAL DISTRICT COURT NUMBER ONE, DALLAS COUNTY, IN SAID COURT AT SAID TERM, DO PRESENT THAT ONE WILLIAMS, TOMMIE LEE JR. DEFENDANT, ON OR ABOUT THE 10TH DAY OF DECEMBER A.D. 2013 IN THE COUNTY OF DALLAS AND SAID STATE, DID INTENTIONALLY AND KNOWINGLY ENTER A HABITATION WITHOUT THE EFFECTIVE CONSENT OF STACIE MARIE ELLIOTT WINKLE, THE OWNER THEREOF, WITH THE INTENT TO COMMIT ASSAULT AGAINST STACIE MARIE ELLIOTT WINKLE,

AND FURTHER, SAID DEFENDANT DID UNLAWFULLY, INTENTIONALLY AND KNOWINGLY ENTER HABITATION WITHOUT THE EFFECTIVE CONSENT OF STACIE MARIE ELLIOTT WINKLE, THE OWNER THEREOF, AND DID THE AND THERE COMMIT AND ATTEMPT TO COMMIT ASSAULT AGAINST STACIE MARIE ELLIOTT WINKLE,

AND IT IS FURTHER PRESENTED TO SAID COURT THAT PRIOR TO COMMISSION OF THE OFFENSES ABOVE, THE DEFENDANT WAS FINALLY CONVICTED OF THE FELONY OFFENSE OF POSSESSION OF A CONTROLLED SUBSTANCE 1 GRAM IN THE CRIMINAL DISTRICT COURT NUMBER 4 (FOUR) OF DALLAS COUNTY, TEXAS, IN CAUSE NUMBER F0357421, ON THE 27TH JUDICIAL DISTRICT COURT DAY OF JANUARY, 2004

AND PRIOR TO THE COMMISSION OF THE OFFENSES FOR WHICH THE DEFENDANT WAS CONVICTED AS SET OUT ABOVE, THE DEFENDANT WAS FINALLY CONVICTED OF THE FELONY OFFENSE OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DELIVER 4 GRAMS, IN THE 203RD JUDICIAL DISTRICT COURT OF DALLAS COUNTY, TEXAS IN THE CAUSE NUMBER F96-48227, ON THE 31ST DAY OF AUGUST 1998.

APPELLANT PLEAD NOT GUILTY AND THE CASE WAS
TRIED TO A JURY. (R.R. VOL.3, P. 10)

THE JURY FOUND APPELLANT GUILTY OF THE
INDICTED OFFENSE. (R.R. VOL.3, P. 121)

THE TRIAL COURT SET SENTENCE AT 30 YEARS CONFINEMENT.
(R.R. VOL. 4 P. 31)

# ISSUES PRESENTED

1. THE EVIDENCE IS INSUFFICIENT TO PROVE ENTRY WITHOUT THE OWNER'S EFFECTIVE CONSENT.

2. THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S OBJECTION TO THE ADMISSION OF A SURREPTITIOUS TELEPHONE CALL PLACED BY THE COMPLAINING WITNESS TO APPELLANT AT THE DIRECTION OF THE POLICE.

3. THE TRIAL COURT ERRED BY FAILING TO LIMIT THE DEFINITIONS OF INTENTIONALLY AND KNOWINGLY TO THE RELEVANT CONDUCT ELEMENTS OF THE UNDERLYING OFFENSE.

4. THE TRIAL COURT LACKED JURISDICTION TO HEAR THE INSTANT CASE AND RENDER A JUDGEMENT BECAUSE THE CASE WAS NOT TRANSFERRED TO IT'S DOCKET.

APPELLANT WAS CHARGED WITH BURGLARY OF A BUILDING BY AN INDICTMENT WHICH READS: IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS. THE GRAND JURY OF DALLAS COUNTY, STATE OF TEXAS, DULY ORGANIZED AT THE JANUARY TERM, A.D. 2013 OF THE CRIMINAL DISTRICT COURT NUMBER ONE, DALLAS COUNTY. IN SAID COURT AT SAID TERM, DO PRESENT THAT ONE WILLIAMS, TOMMIE LEE JR., DEFENDANT, ON OR ABOUT THE 10TH DAY OF DECEMBER A.D. 2013 IN THE COUNTY OF DALLAS AND SAID STATE, DID UNLAWFULLY, INTENTIONALLY, AND KNOWINGLY ENTER A HABITATION WITHOUT THE EFFECTIVE CONSENT OF STACIE MARIE ELLIOTT WINKLE, THE OWNER THEREOF, WITH THE INTENT TO COMMIT ASSAULT AGAINST STACIE MARIE ELLIOTT WINKLE AND FURTHER, SAID DEFENDANT DID UNLAWFULLY, INTENTIONALLY AND KNOWINGLY ENTER A HABITATION WITHOUT THE EFFECTIVE CONSENT OF STACIE MARIE ELLIOTT WINKLE, THE OWNER THEREOF, AND DID THEN AND THERE COMMIT AND ATTEMPT TO COMMIT ASSAULT AGAINST STACIE MARIE ELLIOTT WINKLE. AND IT IS FURTHER PRESENTED TO SAID COURT THAT PRIOR TO THE COMMISSION OF THE OFFENSES SET OUT ABOVE, THE DEFENDANT WAS FINALLY CONVICTED OF THE FELONY OFFENSE OF POSSESSION OF A CONTROLLED SUBSTANCE 1 GRAM, IN THE CRIMINAL DISTRICT COURT NUMBER FOUR OF DALLAS, COUNTY, TEXAS IN CAUSE NUMBER FU3-57421, ON THE 27TH DAY OF JANUARY, 2004. AND THAT PRIOR TO THE COMMISSION OF THE OFFENSE OR OFFENSES FOR WHICH THE DEFENDANT WAS CONVICTED AS SET OUT ABOVE, THE DEFENDANT WAS FINALLY CONVICTED OF THE FELONY OFFENSE OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DELIVER 4 GRAMS, IN THE 203 RD. JUDICIAL DISTRICT COURT OF DALLAS COUNTY, TEXAS, IN CAUSE NUMBER F96-48227, ON THE 31ST DAY OF AUGUST, 1998 (C.R. P7)

THERE IS NO ORDER TRANSFERRING OR RECEIVING IN THE RECORD. (C.R. P. 7)

APPELLANT PLED NOT GUILTY AND THE CASE WAS TRIED TO A JURY. (R.R. VOL. 3, P. 10)

STACIE WINKLE IS THE COMPLAINING WITNESS. (R.R. VOL. 3, P. 14-15)

MS. WINKLE MET APPELLANT IN 2010. THEY BECAME BOY FRIEND / GIRL FRIEND. (R.R. VOL. 3, P. 14-15)

FOR A TIME MS. WINKLE LIVED ALONE IN AN APARTMENT OFF FOREST LANE. APPELLANT OCCASIONALLY SPENT THE NIGHT. HE HAD BELONGINGS THERE AND HE OCCASIONALLY WAS GIVEN A KEY. (R.R. VOL. 3, P. 15-16)

MS. WINKLE DESCRIBED THE RELATIONSHIP AS "VOLATILE" (R.R. VOL. 3, P. 17)

FROM TIME TO TIME APPELLANT CAME OVER TO MS. WINKLE HOUSE UNINVITED, EXPECTING TO SPEND THE NIGHT. (R.R. VOL. 3, P. 19)

ONE TIME APPELLANT "SHOWED UP AND HE — HE HAD BEEN — I WAS ALREADY IN BED. HE WAS BANGING ON THE DOOR AND — FOR — IT SEEMED LIKE FOREVER. AND FINALLY I — I WAS JUST IGNORING HIS CALLS. THE PHONE'S RANGING AND I JUST LYING IN BED THINKING, GO AWAY.

AND HE DID NOT. AND THEN HE STARTED KICKING AT THE DOOR, AND I WENT TO DOOR AND I WAS TELLING HIM FROM INSIDE, JUST GO AWAY. JUST LEAVE. AND HE'S SAYING NO, AND THEN HE'S GETTING - HE STARTS KICKING. I'm LIKE WELL, I'm GOING TO CALL 911 IF YOU DON'T LEAVE. AND HE STARTED KICKING HARDER AND HARDER ON THE DOOR LIKE - I THOUGHT HE WAS GOING TO KICK IT IN, SO I CALLED 911 WHILE HE WAS KICKING THE DOOR. AND HE WAS SAYING HE WAS GOING TO KILL ME WHEN HE GETS IN" (R.R. VOL. 3, P. 19-20)

LATER MS. WINKLE MOVED TO NEW APARTMENT. SHE LET APPELLANT STAY THERE ONCE OR TWICE (R.R. VOL. 3, P 21)

ON DECEMBER 9, 2012, MS. WINKLE WENT TO SEE APPELLANT AT HIS MOTHER'S HOUSE. (R.R. VOL. 3, P. 23)

MS. WINKLE WENT HOME. WHEN SHE CAME BACK OUTSIDE TO WALK HER DOG SHE SAW APPELLANT WALKING UP TO HER HOUSE. (R.R. VOL. 3, P. 26)

MS. WINKLE WENT BACK INSIDE AND LOCKED THE DOOR. SHE "JUST SAT THERE IN SILENCE. ALL THE LIGHTS WERE OUT. I WAS SITTING THERE IN THE DARK, AND SAT ON STAIRWELL AND LOOKED OUT THERE. AND HE STARTED KNOCKING ON THE FRONT DOOR AND KNOCKING ON THE FRONT WINDOW AND JUST — I JUST SAT THERE SILENT AND HE WENT TO STARTED GOING BACK TO THE BACK DOOR AND KIND OF WENT BACK AND FORTH A COUPLE OF TIMES KNOCKING ON FRONT AND BACK DOOR AND BACK WINDOWS (R.R. VOL. 3, P. 27)

THE APPELLANT WENT TO THE KITCHEN WINDOW, WHICH DID NOT LOCK, "AND HE TUGGED ON IT A COUPLE OF TIMES AND IT COME UP AND HE CAME THROUGH THE WINDOW PRETTY FAST." (R.R. VOL. 3. P 28)

MS. WINKLE TESTIFIED: "HE JUST CAME IN. AT THAT POINT, I WAS TELLING HIM — SCREAMING, DO NOT COME INTO MY HOUSE. YOU KNOW, I DON'T WANT YOU IN HERE YOU'RE BREAKING IN MY HOUSE. IT KIND OF HAPPENED TOO FAST. AND HE JUST CAME THROUGH THE WINDOW. I TURNED FROM HIM AND RAN FORWARD THE FRONT OF THE HOUSE TOWARDS THE FRONT DOOR, AND HE — WE THEN CONFRONTED EACH OTHER IN THE LIVING ROOM." (R. R. VOL. 3, P. 28)

M. WINKLE CONTINUED: "WE WERE ARGUING. I WAS TELLING HIM GET - YOU KNOW, JUST TO LEAVE. YOU'RE NOT - WHAT YOU DOING HERE? YOU NEED TO GET OUT. YOU KNOW, HE KNEW I DID NOT WANT HIM THERE, YOU KNOW. HE - JUST - HE HAD BEEN KNOWING THAT. AND WE GOT INTO A CONVERSATION - CONFRONTATION. I ENDED UP ON THE FLOOR AND HE'S ON TOP OF ME AND HE HAD HIS HANDS ON MY NECK." (R. R. VOL. 3, P. 28)

MS. WINKLE HAD HER "PHONE IN HER RIGHT HAND CLUTCHING IT AS HARD AS I COULD. I NEVER - I ALWAYS HAVE MY PHONE IN MY HANDS, YOU KNOW, JUST - SO I DON'T KNOW (R. R. VOL. 3, p. 29)

APPELLANT APPLIED PRESSURE AND CHOKED MS. WINKLE (R. R. VOL. 3, p. 29)

MS WINKLE WAS KICKING HER LEGS AND TRYING TO MOVE HER ARMS AND WAS "TRYING TO ACTUALLY, LIKE, HIT THE WALL OR SOMETHING. I DON'T KNOW. I WAS JUST TRYING TO MAKE SOME KIND OF MOVE OR MAYBE SOMEONE WOULD HEAR, AND I WAS JUST KICKING AND HE JUST - HE GOT UP. (R. R. VOL 3, p. 29-30)

AFTER APPELLANT GOT UP "[H]E STARTED TRYING TO PRY MY PHONE OUT OF MY HANDS. I'm TRYING TO HOLD ONTO IT AND TELLING HIM, DON'T TAKE MY PHONE. JUST YOU KNOW, JUST LEAVE. AND YOU KNOW, AND HE TRIED TO PRY IT OUT OF MY HAND AND SAID — HE SAID, THIS IS SO YOU CAN'T CALL THE POLICE, BITCH. AND HE GOT UP. AND THEN MY CAR KEYS WERE SITTING ON THE CHAIR THAT WAS RIGHT BY THE DOOR, AND HE GRABBED THE CAR KEYS AS WELL AND JUST WENT OUT THE FRONT DOOR." (R.R. VOL. 3, p. 31)

WHEN MS. WINKLE MET WITH A DETECTIVE HE ASKED HER "TO MAKE A RECORDED PHONE CALL" (R.R. VOL. 3, p. 41)

MS. WINKLE WAS ASKED WHAT SHE DID IN ORDER TO MAKE A RECORDED PHONE CALL. SHE ANSWERED " I- HE- YOU KNOW, WHEN HE WE WENT INTO A ROOM AND I HAD- I UNBLOCKED HIS NUMBERS SO- BECAUSE I CAN'T EVEN MAKE OUTGOING CALLS WHEN THE NUMBER'S BLOCKED — SO I UNBLOCKED THE NUMBER AND WE MADE THE CALL (R. R. VOL. 3, p 41-42)

THE TRIAL COURT RETIRED THE JURY. THE FOLLOWING TOOK PLACE

THE COURT: ALL RIGHT. I NEED THE WITNESS TO STEP DOWN.

THE COURT: OKAY. I GUESS I WASN'T CLEAR ON.... I.... I THOUGHT THIS RECORDED......I THOUGHT THIS THING.... THE TRANSCRIPT AND ALL THAT. I THOUGHT THAT WAS FROM

THE JAIL CALL INSTITUTED BY THE DEFENDANT.

MS. MADSON: NO, THIS IS A ONE-PARTY CONSENT PHONE CALL.

THE COURT: INSTITUTED BY THE POLICE.

MS. MADSON: YES, THAT..... THEY'RE ALLOWED.

THE COURT: NO, NO, NOT..... NO, THEY'RE NOT.

MS. MADSON: I DO KNOW THEY ARE ALLOWED.

THE COURT: SHE'S AN AGENT OF THE POLICE.

MS. MADSON: IT'S A NON CUSTODIAL......HE'S NOT IN CUSTODY.

THE COURT: HE'S.....

MS. MADSON: NO, HE'S NOT.

THE COURT: WELL, THERE'S A WARRANT OUT FOR HIS ARREST.

MS. MADSON: I AM CERTAIN THAT THIS IS ALLOWED. IT'S CALLED "ONE-PARTY CONSENT CALL." IF YOU WANT TO GIVE US A QUICK BREAK, WE'LL GO GET......

THE COURT: YOU NEED TO GET A BREAK. I'M SAYING WHEN THE POLICE..... WHEN SHE'S ACTING AS AN AGENT OF THE POLICE.

MS. MADSON: YES, SIR. I UNDERSTAND. IT IS..... I AM CERTAIN OF THIS. IT IS ALLOWED.

THE COURT: WELL, SHE.....

MS. MADSON: I THOUGHT.....

THE COURT: OKAY.....

MS. MADSON: ..... THIS WOULD BE SOMETHING THAT HAS BEEN COVERED IN..... HERE IN CHILD ABUSE CASES WHERE THEY'RE MOST USED. I DIDN'T UNDERSTAND THAT YOU WOULD BE CONCERNED ABOUT IT. I UNDERSTAND YOU ARE AND I WILL TAKE CARE OF IT.

THE COURT: IT'S JUST.....

MS. MADSON: IT'S ALLOWED, I'M SURE.

THE COURT: I UNDERSTAND.

~~MS. MADSON:~~ THE COURT: ALL RIGHT.

MS. MADSON: IT'S ALLOWED, I'M SURE.

THE COURT: I UNDERSTAND.

THE COURT: ALL RIGHT. ON THE RECORD. ALL RIGHT. AT ISSUE IS A PHONE CALL COMING FROM THE COMPLAINING WITNESS AT THE DIRECTION OF THE POLICE OFFICERS TO TALK ABOUT THE OFFENSE, AND I'VE GOT A CASE, 424, S.W. 3d, 560, IT'S..... IT'S A 25 PAGE CASE, AND THAT..... HAS TO DO WITH A SEXUAL OFFENSE, AND THE HISTORY OF..... FOR THE RECORDED CONVERSATIONS OF THE COMPLAINING WITNESS AND IT DOES TALK ABOUT RIGHT TO COUNSEL.

MS. MADSON: YOUR HONOR, THERE WASN'T A WARRANT YET.

THE COURT: I UNDERSTAND ALL OF THAT. AND I'VE READ THE CASES AND ..... AND WHAT..... WHAT'S AT..... THE THING THAT THEY HIGHLIGHT MORE THAN ANYTHING ELSE IS THAT THE COMPLAINING WITNESS WAS

ACTING AS AN AGENT WHEN SHE ELICITED STATEMENTS FROM THE DEFENDANT, AND THE WITNESS DELIBERATELY ELICITED INCRIMINATING STATEMENTS FROM THE DEFENDANT.

IF IT HAD BEEN THE POLICE OFFICER TALKING TO HIM, YOU KNOW, GUESS WHAT? YOU HAVE..... YOU HAVE THE RIGHT....

MS. MADSON: NOT..... HE'S NOT IN CUSTODY.

THE COURT: I UNDERSTAND THAT, BUT IF A POLICE OFFICER'S TALKING TO HIM, HE STILL NEEDS TO IDENTIFY HIMSELF AS A POLICE OFFICER, CORRECT?

MS. MADSON: NO.

THE COURT: YES, OKAY.

MS. MADSON: AT FIRST.....

THE COURT: I'M GOING TO JUST SAY IT AND I'M GOING TO RULE ON IT AND I'M READING THE CASE..... I'M READING IT, I CAN'T PRINT IT, ITS.....

MS. MADSON: I WOULD ASK THAT YOU TALK TO KERRY. WE JUST HAD A.....

THE COURT: I'M NOT TALKING..... OKAY. THIS IS.....

MS. MADSON: ..... CASE WHERE IT HAPPENED LAST WEEK WHERE IT WAS 10 YEARS LATER WHEN SHE CALLED.... A SEXUAL ASSAULT CASE..... SHE CALLED ASKING IS IT..... WORKING AS AN AGENT OF THE STATE AND HE MADE INCRIMINATING STATEMENTS. TEN YEARS LATER, SHE CALLED, AND IT WAS STILL ALLOWED TO BE ADMISSIBLE.

FURTHERMORE, YOU HAVE SAID THAT ONE OF THE FACTORS YOU ARE BASING THIS ON IS THE FACT THAT HE ALREADY HAD A WARRANT. HE DID NOT ALREADY HAVE A WARRANT. THIS WAS A GOOD FIVE DAYS BEFORE A WARRANT WAS EVEN ISSUED ON THIS CASE.

THE COURT: I UNDERSTAND THAT, BUT WHAT WE DON'T WANT IS, WE DON'T WANT THE POLICE DEPARTMENT USING LOOPHOLES IN THE LAW TO.... TO.... AND ELICIT.... TO ENLIST AGENTS TO CALL PEOPLE AND MAKE INCRIMINATING STATEMENTS. I'M JUST....

MS. MADSON: YOUR HONOR, IT DOESN'T EVEN TRIGGER TO 38.22 BECAUSE HE'S NOT IN CUSTODY. 38.22, IT IS NOT TRIGGERED. THE FIRST PRONG OF 38.22 IS A CUSTODIAL INTERVIEW. HE'S NOT IN CUSTODY.

THE COURT: I UNDERSTAND THAT.

MS. MADSON: SO YOUR BASIS OF YOUR RULING IS BASED ON WHAT? BECAUSE I'M NOT UNDERSTANDING.

THE COURT: SHE'S AN AGENT OF A POLICE DEPARTMENT.

MS. MADSON: AND HER BEING AN AGENT OF A POLICE DEPARTMENT PROHIBITS HER FROM SPEAKING TO HIM BASED ON WHAT?

THE COURT: BECAUSE IT'S PROHIBITED. IT PROHIBITS HER.... IT PROHIBITS THE USE IN COURT OF AN AGENT INDUCED INCRIMINATING STATEMENTS.

UNIDENTIFIED PERSON: JUDGE, IF I MAY. I REALIZE THAT YOU HAVE A CASE FROM.... A MORE CURRENT CASE, BUT THERE IS A CASE THAT HASN'T BEEN OVERRULED THAT SAYS THAT POLICE CAN USE AGREEABLE ACCOMPLICES TO OBTAIN RECORDED STATEMENTS. AND THAT AN INFORMANT'S AGREEMENT TO CALL A DRUG SUPPLIER WHILE POLICE LISTENED ON THE PHONE CONVERSATIONS IS ADMISSIBLE ISN'T IT? AND THAT IS TIDASH VERSUS STATE.

THE COURT: I READ IT.

UNIDENTIFIED PERSON: OKAY. AND IN THAT CASE, IT IS YOU WERE GETTING ONE PARTY'S CONSENT TO RECORD THAT CONVERSATION. THERE IS NO RIGHT TO PRIVACY; THEREFORE, HIS 5TH AMENDMENT RIGHT ISN'T TRIGGERED. AND THERE IS NO RIGHT TO REMAIN SILENT FOR HIM UNDER 38.22, BECAUSE IT'S NOT A CUSTODIAL INTERVIEW

MS. MADSON: YOUR HONOR IS THAT......

THE COURT: ALL RIGHT. HOLD ON. DID HE HAVE OTHER OFFENSES?

MS. MADSON: HE HAD TWO OTHER OFFENSES.

THE COURT: AND THEY WERE PENDING AT THE TIME OF THIS ONE?

MS. MADSON: YES, SIR, BUT HE IS NOT TALKING ABOUT THOSE, AND WE'VE EDITED ALL OF THOSE OUT.

THE COURT: OKAY. THE CASE TALKS ABOUT THAT. SO THAT'S MY UNDERSTANDING.

HERE'S THE DEAL. THE STATE CONTENDS THE PHONE CALL IS A PART OF A MIDLAND COURT INVESTIGATION UNRELATED TO OTHER CHARGES AND; THEREFORE, THE RIGHT TO COUNSEL HAD NOT ATTACHED. THE COURT SQUARELY REJECTS THAT.

MS. MADSON: OKAY. SO I'M JUST.... THE REASON WHY I NEED TO SEE THE CASE IS BECAUSE IT DEPENDS ON CONTENT OF THE CALL.

THE COURT: GO PRINT IT OUT. I CAN'T PRINT IT. THERE'S NOTHING I CAN DO TO FIX THIS.

MS. MADSON: OKAY. MAY WE HAVE THE CITE?

THE COURT: 424 S.W. 3RD 560. IT SAYS IT POINT-BLANK.

MS. MADSON: I UNDERSTAND IT SAYS IT POINT-BLANK, BUT THE NUANCES ARE IMPORTANT, BECAUSE I ABSOLUTELY AGREE WITH YOU THAT ANYTHING IN THAT CONVERSATION THAT HAS TO DO WITH THE ROBBERY OR THE AGGRAVATED ASSAULT DOES NOT COME IN. THE 5TH AMENDMENT RIGHT IS TRIGGERED AND I CAN'T GET PAST IT. SO ANY OF THAT, I DON'T GET. I WON'T GET IT. IT'S BEEN REDACTED OUT IN GUILT/INNOCENCE, AND I WON'T GET IT AT PUNISHMENT. I NEVER GET IT. BUT ON THIS CASE, WHERE THERE HASN'T BEEN A

WARRANT AND IT HASN'T BEEN INDICTED.....

THE COURT: HE STILL HAS THE RIGHT TO COUNSEL.

MS. MADSON: THE... IF IT'S ON THE CASES HE ALREADY HAS PENDING....

THE COURT: THAT'S NOT WHAT THIS CASE SAYS. LOOK, THIS AN OPINION WRITTEN BY KELLER. ASK YOUR APPELLATE LAWYER WHAT THAT MEANS. GO AHEAD AND ASK HER.

UNIDENTIFIED PERSON: I DON'T KNOW HOW TO RESPOND RIGHT NOW. I NEED TO LOOK AT THE CASE.

THE COURT: ALL RIGHT. ON THE RECORD. ALL RIGHT. GO AHEAD.

MS. MADSON: YOUR HONOR, THE STATE WOULD CONTEND IN REFERENCE TO THE CASE THAT YOU DIRECTED US TO. YOU WOULD RECALL THAT IN THAT CASE THE DEFENDANT HAD AN ODESSA CASE PENDING. SUBSEQUENTLY MIDLAND INVESTIGATED IT AND MIDLAND DID THE CONSENT CALL. HE ALREADY HAD HIS 5TH AMENDMENT RIGHT IN THE ODESSA CASE, AND THEN MIDLAND TALKED TO HIM ABOUT ANOTHER. THAT EVIDENCE WAS USED IN THE ODESSA CASE, WHICH WAS THE CASE THAT ALREADY HAD THE 5TH AMENDMENT RIGHT TRIGGERED. THAT'S DIFFERENT FROM THIS CASE.

THE COURT: STOP.

AND HERE'S.... HERE'S THE DISTINCTION. THE CASES ARE DALLAS COUNTY. IT'S THE SAME COUNTY....

MS. MADSON: I ABSOLUTELY.....

THE COURT: .... THEY KNEW.....

MS. MADSON: .....AGREE.

THE COURT: HE HAD A LAWYER.

MS. MADSON: I AGREE, HE HAS A LAWYER ON THE CASES THAT ARE ALREADY PENDING.

THE COURT: THAT'S RIGHT. WHICH MEANS HE HAS A LAWYER. THE COPS HAVE TO CALL HIS LAWYER. IT'S BLACK LETTER. THIS IS NOT CLOSE.

MS. MADSON: YOUR HONOR, IT HASN'T BEEN ESTABLISHED THAT HE HAD A LAWYER. IT HASN'T BEEN ESTABLISHED. HE WAS OUT ON BOND AND NOBODY HAD BEEN APPOINTED, AND YOU. ... WE DON'T EVEN KNOW THAT....

THE COURT: HE HAD A RIGHT TO COUNSEL.

MS. MADSON: HE HAD THE RIGHT TO COUNSEL, THE SAME RIGHT TO COUNSEL EVERYONE HAS.

THE COURT: RIGHT. AND THE COPS.... HE'S ACTING AS AN AGENT. IT'S OUT. MOVE ON. BRING IN THE JURY.
I'M NOT SCREWING THIS CASE UP OVER THIS.

MS. MADSON: I WOULD LIKE TO MAKE A RECORD.

THE COURT: YOU HAVE.

MS. MADSON: LIKE I SAID, I ADMIT..... I WOULD LIKE TO MAKE A RECORD WITH THE WITNESS WHERE I ADMIT THE EVIDENCE OUTSIDE THE PRESENCE OF THE JURY FOR RECORD PURPOSES.

THE COURT: WHY? WHAT DO YOU WANT TO.... IT'S ADMITTED FOR RECORD PURPOSES. THERE.

MS. MADSON: I'LL AGREE WITH YOU THAT AT NO POINT CAN I USE IT IN THE ROBBERY CASE. YOU ARE RIGHT. YOU ARE ABSOLUTELY RIGHT.

THE COURT: GOOD AND I'M NOT.....

MS. MADSON: I CAN'T USE IT IN THE ROBBERY.....

THE COURT: NO.

MS. MADSON: .... BUT IN THIS CASE.

THE COURT: PLEASE STOP ARGUING WITH ME ON THIS. HE HAD THE RIGHT TO A LAWYER. ADMITTED FOR RECORD PURPOSES, SO MOVE ON.

MS. MADSON: STATE'S ADMITS STATE'S EXHIBIT 3 AND 4 FOR RECORD PURPOSES.

THE COURT: I'M NOT RUNNING AFOUL OF THE COURT OF APPEALS WHEN I KNOW I'VE GOT A CASE THAT....

MS. MADSON: I WILL.

THE COURT: .... KELLER WROTE.

MS. MADSON: .... SUBMIT TO YOU THAT THEY ARE.... IT'S DISTINGUISHABLE IN A VERY OBVIOUS WAY. AND THAT YOU WOULD NOT BE RUNNING AFOUL, AND THAT THERE IS A CASE ON POINT WITH THE SAME FACTS THAT DIRECTLY ADDRESS THIS ISSUE.

THE COURT: IT'S NOT TEXAS COURT OF CRIMINAL APPEALS WRITTEN MARCH.... MAY 19..... MARCH 19TH OF 2014.

MS. MADSON: AND I SUBMIT TO YOU THAT IT IS DISTINGUISHABLE. IT IS DIFFERENT IN A SIGNIFICANT WAY.

THE COURT: WHAT....

MS. MADSON: ..... AND IT'S DIFFERENT IN THE WAY THAT ONCE YOU COMMIT ONE CRIME, YOU DON'T HAVE A COUNSEL.... A WHOLE SET OF RULES THAT APPLY TO YOU FOR EVERY FUTURE CRIME.

THAT PEOPLE CAN'T INVESTIGATE YOU FOR FUTURE CRIMES. IF THE POLICE HAD BROUGHT HIM IN TO DO AN INTERROGATION ON THAT CRIME, COULD THEY HAVE DONE A MIRANDA WARNING AND AN INTERROGATION ON THIS CRIME?

THE COURT: YEAH, THEY WOULD HAVE HAD TO.

MS. MADSON: RIGHT. THEY WOULD HAVE BEEN ALLOWED TO TREAT HIM JUST LIKE ANY OTHER DEFENDANT.

(R.R. 3, P. 42-52)

ON CROSS-EXAMINATION MS. WINKLE TESTIFIED APPELLANT KNEW THE KITCHEN WINDOW DID NOT LOCK FROM THE PREVIOUS TIMES HE HAD BEEN TO HER HOUSE. (R.R. VOL 3, P. 67)

DURING THE ARGUMENT IN THE LIVING ROOM APPELLANT NEVER STRUCK MS. WINKLE. (R.R. VOL. 3, P. 67)

MS WINKLE TESTIFIED SHE WAS INACCURATE WHEN SHE TOLD THE 911 OPERATOR THAT APPELLANT HAD LEFT 10 TO 15 MINUTES PRIOR TO HER PLACING THE CALL. (R.R. VOL. 3, P 71)

SOMETIME THAT NIGHT, AFTER THE EVENT, MS. WINKLE HEARD HER CAR ALARM GO OFF. WHEN SHE WENT TO CHECK ON IT SHE FOUND HER PHONE ON THE CAR SEAT AND HER KEYS NEARBY.

(R.R. VOL. 3, P. 72-73)

OFFICER JAY KIRBY WAS DISPATCHED TO MS. WINKLE'S HOUSE ON THE NIGHT IN QUESTION.

MS. WINKLE "WAS UPSET AT THE TIME WHEN I FIRST - WHEN I FIRST CONTACTED HER." (R.R. VOL. 3, P 75)

MS. WINKLE TOLD OFFICER KIRBY "THAT HER EX-BOYFRIEND HAD FORCED HIS WAY INTO THE HOUSE BY COMING THROUGH A WINDOW." (R.R. VOL. 3, P 77)

"THE WINDOW WAS SHUT LIKE A WOODEN DOWEL. THE WAY I REMEMBER IT, YOU COULD - THE DOWEL DIDN'T SHUT THE WINDOW COMPLETELY, OR WHATEVER. YOU COULD POP THE WINDOW UP A LITTLE BIT AND REACH IN AND REMOVE THE DOWEL". (R.R. VOL. 3, P. 77)

MS. WINKLE TOLD OFFICER KIRBY THAT HE HAD TAKEN HER PHONE AND HER KEYS. (R.R. VOL. 3, P. 79)

OUTSIDE THE PRESENCE OF THE JURY THE TRIAL COURT RULED: "WITH REGARDS TO THE ISSUE OF THE PHONE CONVERSATION BETWEEN THE COMPLAINING WITNESS AND THE DEFENDANT. I'M GOING TO LET IT IN, BUT THERE ARE CERTAIN THINGS I NEED TO PUT ON THE RECORD FIRST." (R.R. VOL. 3, P. 82)

THE FOLLOWING COLLOQUY TOOK PLACE:

WE'VE GOT CAUSE NUMBER F11-58734, IN A CAUSE INVOLVING THE DEFENDANT AND THE COMPLAINING WITNESS IN THE CASE WE'RE ON TRIAL. F11 CASE IS A ROBBERY, AND THAT'S THIS.... I'M GOING TO REFER TO IT AS A ROBBERY, OR THE ROBBERY CASE.

IN THE ROBBERY CASE, DEFENDANT HAD A LAWYER ENTER HER APPEARANCE OF MAY 31ST 2012. THE OFFENSE DATE OF THE BURGLARY CASE IS DECEMBER OF 2012, SO AT THAT TIME, HE HAD AN ATTORNEY. THE STATE KNEW HE HAD AN ATTORNEY. THE POLICE, THEREFORE, KNEW THAT HE HAD AN ATTORNEY.

THE COMPLAINING WITNESS GOES TO GET A PROTECTIVE ORDER THROUGH THE DISTRICT ATTORNEY'S OFFICE ON DECEMBER 2011. THE PHONE CALL AT THE POLICE REQUEST BY THE COMPLAINING WITNESS WAS MADE ON DECEMBER 13TH?

MS. MADSON: YES, SIR.

THE COURT: THE COURT FINDS THAT THE COMPLAINING WITNESS WAS ACTING AS AN AGENT FOR THE POLICE AND, THEREFORE, THE STATE. I THINK WE CAN ALL AGREE ON THOSE FACT, CORRECT?

MS. MADSON: YES.

THE COURT: OKAY. I'M JUST TRYING TO FRAME THE ISSUE.

MS. MADSON: YOUR HONOR, MAY WE ALSO ADD THAT THE WARRANT WAS NOT ISSUED UNTIL DECEMBER 18TH, 2012?

THE COURT: I KNOW. YES, THERE'S NO CHARGES, WE'RE NOT PENDING IN THE BURGLARY CASE, WARRANT WAS NOT ISSUED.

MS. MADSON: AND THE DEFENDANT WAS NOT IN CUSTODY.

THE COURT: AND HE WAS NOT IN CUSTODY.

HOWEVER FOR THE ROBBERY CASE, HE WAS IN CUSTODY, HE'S ON BOND, WHICH IS.... WHICH IS CONSIDERED AS BEING IN CUSTODY. HE HAS BEEN MAGISTRATE. HE HAD BEEN ARRESTED, GONE TO JAIL, GOT AN ATTORNEY..... OFF THE RECORD.

THE COURT: BACK ON THE RECORD.

PROTOCOL DICTATES THAT WHEN A PERSON IS IN CUSTODY AND HAS AN ATTORNEY, ANY CONTACT WITH THE DEFENDANT SHOULD BE MADE THROUGH HIS ATTORNEY. THE PROTOCOL AND CONSTITUTIONAL LAW ARE TWO DIFFERENT THINGS. AND IT CAN ALSO BE SAID THAT..... THAT THE POLICE ARE PROHIBITED FROM DOING INDIRECTLY WHAT THEY ARE PROHIBITED FROM DOING DIRECTLY. AND THEY COULD HAVE CALLED AND SAID, DO YOU WANT TO COME TALK TO US? HE PROBABLY WOULD HAVE SAID NO. BUT THE QUESTION IS WHETHER OR NOT HIS RIGHT TO COUNSEL UNDER THE 6TH AMENDMENT AND..... OF THE TEXAS CONSTITUTION, HAS IT ATTACHED? AND THE ANSWER IS NO.

AND IN MY OPINION, I THINK THE COURT OF APPEALS SHOULD ADDRESS THIS ISSUE DIRECTLY ONCE AND FOR ALL. AND IT'S NOT GOING TO GET ADDRESSED IF I DON'T ALLOW THE EVIDENCE, BECAUSE I THINK A RULING ALLOWING THE EVIDENCE AND UPHOLDING MY DECISION IS SIMPLY GOING TO PUT US DOWN A SLOPE AND SEND A MESSAGE TO THE POLICE DEPARTMENT TO USE FRIENDLY AGENTS TO DO WHAT THE POLICE PREVENTED FROM DOING DIRECTLY.

IT'S A DANGEROUS PRECEDENT, BUT SOMEBODY'S GOT TO MAKE..... MAKE AN ANSWER ONCE AND FOR ALL SAYING THIS IS PERMITTED, OR IT'S NOT PERMITTED. AND THAT AIN'T GOING TO BE ME, BECAUSE IF I REFUSE TO ALLOW THE EVIDENCE, IT'S NOT GOING TO GET ADDRESSED. SO DEFENSE'S OBJECTION..... THE DEFENSE'S.... THE OBJECTION IS NOTED.

YOU HAVE A RUNNING OBJECTION. YOU'RE PRESERVED YOUR OBJECTION FOR PURPOSES OF.... OF FEDERAL LAW AND STATE IN THIS COURT'S OPINION. YOU'VE OBJECTED.

MR. EILAND: I HAVE OBJECTED, YOUR HONOR. I WOULD LIKE TO PUT SOMETHING ON THE RECORD.

THE COURT: GO AHEAD.

MR. EILAND: IN OUR OBJECTION, AND THE REASONS FOR OUR OBJECTION, YOUR HONOR, IT'S BECAUSE WE DO BELIEVE THAT THE 6TH AMENDMENT RIGHT TO COUNSEL HAS ATTACHED. AND AS FAR AS THE CASE IS CONCERNED, IT WAS A CASE THAT WAS HANDLED..... THAT WAS HANDLED BY LAW ENFORCEMENT AGENCIES WITHIN DALLAS COUNTY.

NUMBER TWO, WE HAVE A VICTIM IN THE CASE.... IN THIS PARTICULAR CASE THAT IS ALSO THE VICTIM IN THE ROBBERY CASE. AND WE BELIEVE THAT BOTH THOSE CASES, ALTHOUGH THEY ARE OUT OF SEPARATE TRANSACTIONS, WE BELIEVE THEY ARE CLOSE IN PROXIMITY BECAUSE DURING THE ONE-PARTY CONSENT PHONE CALL......

THE COURT: I THINK.... OH, THEY'RE RELATED, NO QUESTION. THEY TALK ABOUT THE OTHER OFFENSE, AND WE'RE NOT ALLOWING THAT EVIDENCE. THAT'S BEEN REDACTED. I... IT'S... YOU'RE RIGHT; THERE'S... OR THERE'S... THERE...THE TWO GO HAND IN HAND WITH EACH OTHER.

MR. EILAND: AND WE BELIEVE THAT BECAUSE INFORMATION THAT WAS ELICITED DURING THAT ONE-PARTY CONSENT CALL REGARDING THE ROBBERY CASE, WE BELIEVE THAT THE TAINTS THIS PARTICULAR ONE-PARTY CONSENT CALL BECAUSE THAT RIGHT TO COUNSEL DID ATTACH TO THAT PARTICULAR OFFENSE AND WE BELIEVE THAT IT CARRIES OVER TO THIS PARTICULAR OFFENSE AS WELL.

THE COURT: THE OBJECTION'S NOTED. IT'S OVERRULED.
(C.R. P. 82-86)

THE TRIAL COURT STATED:

LET ME JUST SAY THIS: I THINK THAT THE RULES OF EVIDENCE, CODE OF CRIMINAL PROCEDURE, THE TEXAS CONSTITUTION, UNITED STATES CONSTITUTION AND THE SENSE FAIR PLAY IS THAT WHEN A PERSON IS TALKING TO POLICE, HE SHOULD KNOW HE'S TALKING TO POLICE. OR A PERSON'S TALKING TO AN AGENT OF THE POLICE, THEY SHOULD KNOW.

IF THIS WAS JUST A PHONE CALL THAT THE DEFENDANT MADE TO THE COMPLAINING WITNESS, NO QUESTION IT COMES IN. IF THIS WAS A PHONE CONVERSATION THAT THE COMPLAINING WITNESS SET UP ON HER OWN VOLITION BECAUSE SHE WANTED TO HELP, FOR LACK OF A BETTER TERM, HER CASE, THAT WOULD COME IN TOO.

BUT IT HAS TO DO WITH WHEN THE POLICE ARE DIRECTING SOMEBODY TO DO THEIR INVESTIGATION FOR THEM TO ELICIT INCRIMINATING STATEMENTS WHEN THEY KNOW THE PERSON HAS A LAWYER, AT LEAST ON ONE CASE THAT IS INVOLVED WITH THE COMPLAINING WITNESS, AND THE DEFENDANT DOES NOT KNOW HE'S TALKING TO THE POLICE WHEN THERE WAS CERTAINLY PROBABLE CAUSE TO DETAIN HIM FOR THE BURGLARY CASE WHEN HE WAS ALREADY IN CUSTODY ON THE ROBBERY CASE. FIRST THING THE STATE COULD HAVE DONE IS COME DOWN AND ASKED ME TO HOLD THE BOND INSUFFICIENT ON... ON... ON THE OTHER CASE AND ISSUE AN ARREST WARRANT. BUT THEY DIDN'T DO IT THAT WAY.

THE QUESTION FOR THE COURT OF APPEALS IS GOING TO BE WHETHER OR NOT THAT IS CONSTITUTIONALLY PERMISSIBLE UNDER THE TEXAS CONSTITUTION AND UNITED STATES CONSTITUTION. AND I DON'T KNOW WHAT THE ANSWER IS. WE WILL FIND OUT.

SO BRING THE JURY IN.
(R.R. VOL. 3, P. 87-88)

STACIE WINKLE WAS RE-CALLED (R.R. VOL. 3, P 89)

THE TRIAL COURT INSTRUCTED THE JURY AS FOLLOWS:

THE COURT: AND, FOLKS, I'M JUST GOING TO READ THIS TO YOU.

ALL RIGHT. YOU'RE GOING TO HEAR A PHONE CALL AND YOU'RE GOING TO HEAR A.... GET A TRANSCRIPT OF IT. AND THAT'S BEEN BY AGREEMENT AS TO WHAT WAS SAID. HOWEVER, THE AUDIO PORTION CONTROLS AND IF YOU HEAR SOMETHING ON THE AUDIO THAT IS DIFFERENT THAN THE TRANSCRIPT, THAT IS WHAT YOU'RE GOING TO GO BY, OKAY? SO, THE AUDIO PORTION CONTROLS.

YOU'RE ALSO GOING TO HEAR.... NOT HEAR SOMETHINGS ON THE VIDEO [SIC] THAT'S BEEN ELIMINATED. YOU'RE NOT GOING TO GUESS WHAT THAT WAS ABOUT. YOU'RE NOT GOING TO CONSIDER IT. YOU'RE NOT TO EVEN THINK ABOUT IT.

FOR THOSE OF YOU THAT HAVE SEEN STAR WARS WHEN BEN KANOBI WENT TO THE STAR OFFICERS AND SAID, THESE ARE NOT DROIDS YOU'RE LOOKING FOR AND RAISED HIS HAND. WELL, DON'T CONSIDER IT. YOU KNOW, YOU'LL... YOU'LL JUST SCREW EVERYTHING UP. SO DON'T CONSIDER IT.

FURTHER, IF YOU HEAR SOMETHING THAT YOU THINK, WELL, MAYBE THAT'S NOT RELATED TO THIS CASE. THERE ARE WAYS OF THINGS THAT ARE NOT ADMISSIBLE TO PROVE GUILT AND YOU'RE NOT TO CONSIDER... YOUR CHOICE... YOU MAY CONSIDER THEM FOR ANOTHER PURPOSE SUCH... SUCH AS PROOF OF MOTIVE, OPPORTUNITY, INTENT, PREPARATION, PLAN, KNOWLEDGE, IDENTITY OR ABSENCE OF MISTAKE OR ACCIDENT. YOU CAN USE IT... MAY USE IT FOR THOSE. I'M NOT TELLING YOU TO. I'M JUST SAYING YOU MAY. IT IS YOUR CHOICE.

SO, THIS IS IMPORTANT. AND BECAUSE WE WANT TO GET IT RIGHT. AND WE ONLY WANT YOU TO CONSIDER THE EVIDENCE THAT YOU'RE ALLOWED TO CONSIDER FOR THE PURPOSE OF WHICH IT WAS INTENDED.

THE SYSTEM CEASES TO FUNCTION PROPERLY IF WE DON'T FOLLOW THE RULES. SO WITH THAT, STATE?
(R.R. VOL. 3, P. 89-90)

MS. VINKLE TESTIFIED SHE WENT TO SEE DETECTIVE OLIVERA AT THE GARLAND POLICE DEPARTMENT ON DECEMBER 13, 2012. WHILE SHE WAS THERE MS. VINKLE PLACED A PHONE CALL TO APPELLANT WHICH WAS RECORDED BY DETECTIVE OLIVERA. STATE'S EXHIBITS 3 AND 4 WERE ADMITTED OVER PREVIOUSLY STATED OBJECTION (R.R. VOL. 3, P. 91-92)

THE AUDIO WAS PUBLISHED AND A TRANSCRIPT PROVIDED TO THE JURY.
(R.R. VOL. 3, P. 92)

THE STATE RESTED. (R.R. VOL. 3, P. 96)

OUTSIDE THE PRESENCE OF THE JURY APPELLANT OBJECTED AS FOLLOWS:

MR. EILAND: YOUR HONOR, MY OBJECTION WAS TO THE LAST TWO SENTENCES AND THE FIRST PARAGRAPH ON THE THIRD PAGE WHERE IT INDICATES... IT SAYS, "AND YOU ALWAYS TRIED TO SAY ONCE YOU FEEL LIKE YOU'RE IN TROUBLE THAT YOU WON'T DO IT ANYMORE, BUT I KNOW BETTER. I CAN'T LIVE LIKE THIS ANYMORE. I'VE BEEN THROUGH THIS BEFORE WITH YOU"

WE BELIEVE THAT IN LINE WITHOUT OWN PREVIOUS OBJECTION REGARDING THE ADMISSIBILITY OF THE PHONE CALL, THAT IT WAS TOO CLOSE IN PROXIMITY TO THE PRIOR ROBBERY CASE, AND WE BELIEVE THAT IT IS INADMISSIBLE.

THE COURT: UNDERSTOOD, AND THE OBJECTION'S OVERRULED. I DID CONSIDER IT, AND I KNOW IT'S.... IT'S CLOSE AND THE WHOLE THING IS CLOSE AND WHAT IT REFERS TO AS BEING WHETHER OR NOT IT REFERS TO THE ROBBERY CASE. BUT THE JURY KNOWS NOTHING ABOUT THE ROBBERY CASE, SO I JUST DON'T.... I DON'T.... I THINK THE.... I KNOW... I THINK IT'S ADMISSIBLE, AND WE'LL LET THE COURT OF APPEALS DEAL WITH IT.

(R.R. VOL 3, P. 96-97)

ELIZABETH WILSON, IS APPELLANT'S MOTHER. SHE TESTIFIED THAT IN DECEMBER 2012, APPELLANT WAS STAYING WITH HIS GIRLFRIEND, STACIE WINKLE. (R.R. VOL.3, P. 100)

MS. WILSON TESTIFIED THAT APPELLANT AND MS. WINKLE LIVED IN DALLAS AND THEN MOVED TO GARLAND WHERE THE EVENT TOOK PLACE. (R.R. VOL.3, P. 100)

MS. WILSON KNOWS THAT THEY MOVED IN "TOGETHER" BECAUSE HE MOVED SOME OF HIS STUFF IN MY TRUCK." (R.R. VOL. 3, P. 101)

AT SOME POINT APPELLANT AND MS. WINKLE BROKE UP AND MS. WINKLE RETURNED SOME OF HIS CLOTHES TO MS. WILSON HOUSE. (R.R. VOL.3, P. 101)

APPELLANT RESTED. (R.R. VOL.3, P. 109)

BOTH SIDES CLOSED. (R.R. VOL.3, P. 109)

APPELLANT OBJECTED TO THE JURY CHARGE AS FOLLOWS:

MR. EILAND: YOUR HONOR, THE DEFENSE IS GOING TO OBJECT TO BOTH....

ELEMENTS OF BURG HAB, ONE WITH INTENT TO COMMIT ASSAULT; THE OTHER COMMIT THE ASSAULT. WE'RE OBJECTING. WE BELIEVE THAT THE PROSECUTION ON THE STATE SHOULD MAKE AN ELECTION AS TO ONE OR THE OTHER.
(R.R. VOL. 3, P. 109)

THE OBJECTION WAS OVERRULED. (R.R. VOL. 3, P. 110)

THE TRIAL COURT INSTRUCTED THE JURY ON THE CULPABLE MENTAL STATES AS FOLLOWS:

A PERSON ACTS INTENTIONALLY, OR WITH RESPECT TO THE NATURE OF HIS CONDUCT OR TO A RESULT OF HIS CONDUCT WHEN IT IS HIS CONSCIOUS OBJECTIVE OR DESIRE TO ENGAGE IN THE CONDUCT OR CAUSE THE ASSAULT.

A PERSON ACTS KNOWINGLY, OR WITH KNOWLEDGE, WITH RESPECT TO THE NATURE OF HIS CONDUCT OR TO CIRCUMSTANCES SURROUNDING HIS CONDUCT WHEN HE IS AWARE OF THE NATURE OF HIS CONDUCT OR THAT THE CIRCUMSTANCES EXIST. A PERSON ACTS KNOWINGLY, OR WITH KNOWLEDGE, WITH RESPECT TO A RESULT OF HIS CONDUCT WHEN HE IS AWARE THAT HIS CONDUCT IS REASONABLE CERTAIN TO CAUSE THE RESULT.

(C.R. P. 54)

THE JURY FOUND APPELLANT GUILTY OF THE INDICTED OFFENSE. (R.R. VOL. 3, P. 121)

AT THE OUTSET OF THE PUNISHMENT PHASE THE FOLLOWING COLLOQUY TOOK PLACE:

THE COURT, IN AN ABUNDANCE OF CAUTION, NEEDS TO REVISIT THE ISSUE OF THE PHONE CALL PLACED TO THE DEFENDANT AT THE SUGGESTION OF THE POLICE DEPARTMENT. AND I SHOULD HAVE FIGURED THIS OUT

YESTERDAY BUT I DIDN'T.

THERE'S A COUPLE OF THINGS THAT ARE CONCERNING. ONE, IT WAS DISCUSSED THAT THIS TO A TOOL THAT IS BEING TAUGHT AT LEGAL SEMINARS. THAT CONCERNS THE COURT BECAUSE IT ENCOURAGES UNDERHANDED TACTICS TO ALLOW THIS BEHAVIOR; ENCOURAGES DECEPTION. IT ENCOURAGES POLICE DEPARTMENTS; IT ENCOURAGES D.A.'S OFFICES TO HOLD BACK ON ONE CHARGE IF A PERSON IS CHARGED WITH TWO COUNTS OF ASSAULT; WITH ONE BEING SIMPLE ASSAULT, THE OTHER BEING AGGRAVATED ASSAULT, CHARGING WITH THE ASSAULT, HOLD BACK ON THE AGGRAVATED ASSAULT; AND HAVE THE VICTIM CONTACT THE DEFENDANT AS A PRETEXT. IT ENCOURAGES THAT.

WHEN THE PERSON IS REPRESENTED BY A LAWYER, RULE 402 OF THE TEXAS RULES OF DISCIPLINARY AND PROFESSIONAL CONDUCT, "A, IN REPRESENTING A CLIENT; A LAWYER SHALL NOT COMMUNICATE OR CAUSE OR ENCOURAGE ANOTHER TO COMMUNICATE ABOUT THE SUBJECT OF THE REPRESENTATION WITH A PERSON, ORGANIZATION OR ENTITY OF THE GOVERNMENT THE LAWYER KNOWS TO BE REPRESENTED BY ANOTHER LAWYER REGARDING THAT SUBJECT".

"UNLESS THE LAWYER HAS THE CONSENT OF THE OTHER LAWYER, IS NOT AUTHORIZED TO DO SO. HAVING A LAWYER INVESTS A DEFENDANT WITH CERTAIN RIGHTS. AND THE GOVERNMENT LAWYER CANNOT ALLOW THAT TO HAPPEN".

ANOTHER CASE THEY TALK ABOUT IN RULE 402, AND I LOOKED. SO THE COURT OF APPEALS NEEDS TO STEP IN AND FIX THIS. SO THAT NEEDS TO BE DONE.

MS. MADSON: AND FOR THE RECORD PURPOSES IN THIS CASE, THERE'S NO INDICATION THAT ANY OF THIS WAS DONE AT AN ATTORNEY'S DIRECTION OR UNDER AN ATTORNEY'S AUTHORITY.

THE COURT: YES. ...YES, IT IS. THE POLICE DEPARTMENT WORKS FOR YOU.

MS. MADSON: NO, SIR, THEY....

THE COURT: YES, I'M NOT GOING TO ARGUE.....

MS. MADSON: NO, SIR, I....

THE COURT: DON'T OVER-TALK ME.

YOU'RE UNDER AN OBLIGATION. YOU'RE NOT SUPPOSE TO TEACH IT AT LEGAL CLINICS.

MS. MADSON: AND YOUR HONOR, IN. ... WHEN I SAY NO SIR, I MEAN I THIS CASE. I WANT TO MAKE SURE THAT THIS RECORD IS CLEAR THAT THIS WAS NOT DONE AT THE ANY KIND OF DIRECTION FROM ANY KIND OF ATTORNEY. THERE ARE TIMES WHEN THE AGENCY WILL COMMUNICATE WITH US PRE-INDICTMENT. IN THIS CASE, THAT WAS NOT DONE. AND SPECIFICALLY, I DO WANT TO MAKE SURE THAT THIS RECORD IS CLEAR, SO I WOULD LIKE TO OFFER STATE'S EXHIBIT.... WHAT NUMBER ARE WE ON?

THE COURT: I'M NOT ACCUSING THIS....THE OFFICE OF ODING THAT.

MS. MADSON: I DO UNDERSTAND, HOWEVER, YOU ARE VERY CLEARLY ASKING FOR THE COURT OF APPEALS TO LOOK AT THIS CASE. SO I WANT TO MAKE SURE THE FACTS ARE CLEAR ON THIS CASE, AND SO I WOULD OFFER STATE'S EXHIBIT 16 FOR RECORD PURPOSES.

AND I WOULD ALSO CITE THE FACT THAT MS. WINKLE WHEN SHE SAID SHE WAS LEAVING OUR OFFICE FROM MEETING WITH A PROTECTIVE ORDER ATTORNEY, THE DETECTIVE WAS SUPPOSE TO HEAR THAT AND SAID, OH, THAT IS GREAT. SO STATE WOULD OFFER STATE'S EXHIBIT 16 FOR RECORD PURPOSES.

THE COURT: IT'S ADMITTED.

BUT WHAT I'LL... ALL I'M POINTING OUT IS THAT IT'S... THE FACT IS THAT THE POLICE DEPARTMENT, JUST LIKE EXCULPATORY INFORMATION, YOU... IT'S A TWO WAY STREET AND THEY'RE HELD TO THE SAME STANDARD AS YOU. THEY CAN'T CONTACT PEOPLE WHO ARE REPRESENTED BY ATTORNEYS EITHER. BECAUSE... AND IF ANY INFORMATION GETS GLEANED FROM THAT, ACCORDING TO RULE 402, IT'S AN ETHICAL VIOLATION.

MS. MADSON: I UNDERSTAND YOUR CONCERNS. I UNDERSTAND YOU WANT THE COURT TO DEAL WITH IT. I'M JUST TRYING TO MAKE SURE THAT THE RECORD IS CLEAR FOR THE FACTS OF THIS CASE SO THAT THERE IS NOTHING THAT IS UNCLEAR WHEN THEY ARE DECIDING IT.

THE COURT: I UNDERSTAND THAT, BUT IT'S... IT'S... IT'S... WHAT I DON'T WANT THE COURT OF APPEALS DOING IS GOING AND LOOKING AT THIS AND FINDING SOME LOOPHOLE.

MS. MADSON: I'M MAKING SURE THAT THE FACTS ARE CLEAR SO WHEN THEY DO IT THEY HAVE ALL THE INFORMATION THAT SPECIALLY APPLIES TO THIS CASE.

THE COURT: I UNDERSTAND THAT. BUT AT SOME POINT THE LAWYER'S GOT TO LOOK AT IT AND SAY, LOOK THIS PERSON'S REPRESENTED BY A LAWYER. I CAN'T USE THIS INFORMATION.

MS. MADSON: AND AT SOME POINT, IF ANYBODY EVEN CONTACTS ME, THAT IS MY INSTRUCTION, HOWEVER, IF THIS DETECTIVE, IN GOOD FAITH, USED AN INVESTIGATION TOOL... AND IF YOU LOOK AT THE REPORT, HE DID GO ABOVE AND BEYOND. HE LOOKED AT EVERYTHING BEFORE FILING THE CASE.

THE COURT: I UNDERSTAND THAT, BUT HE... HE'S... CONTACTED SOMEBODY WHO... WHO HE KNEW WAS REPRESENTED BY A LAWYER.

MS. MADSON: YES, SIR, AND I THINK HE DID A GREAT DETECTIVE JOB. I THINK HE WENT ABOVE AND BEYOND. MOST DETECTIVES HAVE... I HAVE NO PROBLEM WITH WHAT HE DID. HE ACTUALLY PULLED THE 911 CALL AND GAVE A NARRATIVE OF WHAT WAS IN IT TO ME.

THE COURT: I UNDERSTAND THAT, BUT DON'T YOU HAVE A PROBLEM AS A LAWYER WITH....

MS. MADSON: NO, SIR.

THE COURT: ...WITH THIS?

MS. MADSON: NO, SIR, AND I DON'T FOR....

THE COURT: AND THAT'S MY POINT. THAT IS A BREACH OF PROFESSIONAL CONTACT...... CONDUCT TO CONTACT SOMEONE WHO IS REPRESENTED BY AN ATTORNEY.

MS. MADSON: AND I WILL TELL YOU THAT I BELIEVE THAT THERE IS A SEPARATION. THE RULES OF PROFESSIONAL CONDUCT YOU'RE CITING ARE FOR LAWYERS. I BELIEVE THOSE RULES APPLY TO ME, HOWEVER, IT'S A DIFFERENT ~~SEPARATION~~ QUESTION OF WHETHER OR NOT A DETECTIVE CAN IN GOOD FAITH USE INVESTIGATIVE TOOLS TO FULLY INVESTIGATE A CASE. THAT'S WHAT WE WANT THEM TO DO. AND IF THE CONSTITUTION ALLOWS......

MS. MADSON: I'M NOT ENCOURAGING IT SPECIFICALLY. I DON'T TRAIN THEM TO DO THAT.

THE COURT: DO YOU ENCOURAGE THAT?

MS. MADSON: IT'S NEVER REALLY COME... THIS IS THE FIRST TIME IN MY ENTIRE TIME AS A FAMILY VIOLENCE DA, I HAVE EVEN HAD A ONE PARTY CONCENT CALL. THIS IS THE FIRST TIME, SO I DON'T THINK THAT IT'S BEING WIDELY ENCOURAGED OR I WOULD HAVE HAD A WHOLE LOT MORE.

THE COURT: BECAUSE IF THIS HAPPENED IN A CIVIL CASE....

MS. MADSON: ARE WE ON THE RECORD FOR THIS?

THE COURT: YES.
IF THIS HAPPENED IN A CIVIL CASE, I.... I THINK THAT THE COURT WOULDN'T HESITATE TO EXCLUDE THE EVIDENCE.

MS. MADSON: I DON'T PRACTICE CIVIL LAW. I DON'T HAVE OPINIONS ON IT AND I'VE NEVER BEEN INVOLVED IN ANYTHING CIVIL.

THE COURT: SHOULDN'T A CIVIL... SHOULD A CIVIL CLIENT BE AFFORDED MORE PROTECTION THAN A CRIMINAL DEFENDANT?

MS. MADSON: I BELIEVE THAT THAT'S A COMPLETELY DIFFERENT ARENA. I CAN'T SAY ANYTHING ABOUT WHAT GOES ON IN A CIVIL COURT AND I'M NOT GOING TO HAVE AN UNINFORMED OPINION.

THE COURT: FAIR ENOUGH.

BUT THAT... THAT SEEMS TO BE THE... THAT YOU'RE ADVOCATING.

SO WITH THAT, I THINK THE RECORDS CLEAR ON HOW THE COURT FEELS, BUT THERE'S BEEN NOTHING ON A 402 THAT I COULD FIND, BUT I THINK THE DISTRICT ATTORNEY'S OFFICE SHOULD BE TAKING AN ACTIVE ROLE IN TELLING POLICE DEPARTMENTS IF THEY'RE REPRESENTED BY LAWYERS, YOU CANNOT CONTACT THEM. ESPECIALLY WHEN THEY'RE IN CUSTODY, WHETHER IT BE CONSTRUCTIVE CUSTODY OR WHILE ON BOND OR ACTUAL CUSTODY, THEY HAVE A LAWYER. THEY HAVE A LAWYER.

SO CALL YOUR FIRST WITNESS. OH, YOU'RE GOING TO CHANGE YOUR PLEA....
    (R.R. VOL. 4, P. 5-11)


STATE'S EXHIBIT 6 THROUGH 13, EVIDENCING THE EXISTENCE OF PRIOR CONVICTIONS, WERE ADMITTED WITHOUT OBJECTION. (R.R. VOL. 4, P. 12)

STACIE WINKLE TESTIFIED THAT APPELLANT NEVER " HELPED ME WITH ANYTHING." (R.R. VOL. 4, P. 15)

MS. WINKLE WAS ASKED TO TELL THE TRIAL COURT "ABOUT THE ROBBERY." SHE STATED:
A. IT WAS.... I WENT TO PICK HIM UP. IT WAS....MY SISTER AND I HAD GONE OUT FOR HER BIRTHDAY, AND.... AND HE WAS OVER, YOU KNOW, WHERE HE USUALLY HANGS OUT IN SOUTH DALLAS. AND THEN

I PICKED HIM UP ~~AFTER~~ AFTERWARDS.... AFTER WE GOT BACK FROM....
ME AND MY SISTER WENT TO A BAR, SO IT WAS ABOUT... IT WAS AFTER
A LITTLE AFTER 2:00 O'CLOCK. I TOOK HER TO HER CAR. I WENT TO
GO PICK HIM UP, AND I PICKED HIM UP AT HIS AUNT'S HOUSE, AND IT'S AN
APARTMENT. AND WE WENT AROUND THE CORNER TO ANOTHER
APARTMENT COMPLEX. AND WHEN WE WERE GOING TO LEAVE THERE,
THERE WAS, LIKE, A MINOR FENDER BENDER, LIKE, A CLIDENT. LIKE,
AS HE WAS BACKING UP.... HE WAS DRIVING MY CAR. .. AS HE... AS
HE WAS BACKING UP, THERE WAS ANOTHER CAR BACKING UP, AND THEY
BUMPED IN THE BACK, AND THERE WAS A DENT OUT IN THE BACK OF
MY CAR. AND I WAS.... I WAS, LIKE, HOLD UP. STOP. WAIT A MINUTE.
YOU KNOW, WE'RE... I WANTED... I GUESS... HE WANTED TO JUST, LIKE,
DIDN'T CARE. HE WANTED TO DRIVE OFF. HE DIDN'T WANT TO MAKE A
BIG DEAL. AND I'M JUST... THAT WASN'T... I MEAN, I GOT OUT, I
LOOKED AT MY CAR, THERE WAS A DENT.

SO, I WAS LIKE... YOU KNOW, I GOT UPSET. AND I WAS LIKE, NO,
SOMEONE, YOU KNOW, I DON'T KNOW IF IT'S YOUR FAULT OR HIS
FAULT, OR WHATEVER, BUT, YOU KNOW, SOMETHING NEEDS TO BE
DONE. GET... I DON'T KNOW, YOUR NAME, YOUR INSURANCE,
WHATEVER, SOMETHING, YOU KNOW. AND I WAS JUST UPSET AND HE
KEPT... HE STARTED YELLING AT ME, JUST GET BACK IN THE
CAR, STUPID WHITE BITCH, YOU KNOW, STUFF LIKE THAT.

I STARTED GETTING MAD AT HIM JUST SCREAMING AT ME. AND THAT
MADE ME EVEN MORE.... THAT MADE ME VERY UPSET EVEN.... HE
NEVER REALLY SAID SOMETHING LIKE THAT TO ME BEFORE, AND I
WAS... HE WAS... LIKE, I WAS IN... HE WAS? YOU KNOW WHERE
YOU'RE AT? AND JUST BECAUSE I'M LIKE, WHITE I GUESS, I DON'T KNOW.

(R.R. VOL. 4, P. 15-16)

MS. WINKLE CONTINUED:

A. YEAH, WE WERE ARGUING. I WAS MAD. I MEAN, I....I ACTUALLY GOT IN THE DRIVER'S SEAT AND DROVE OUT OF THERE AND DROVE AROUND THE CORNER. AND IT WAS LITERALLY RIGHT AROUND THE CORNER FROM WHERE HIS AUNT'S; AND WE WERE JUST ARGUING. I WAS MAD, AND HE WAS...YOU KNOW, I WAS JUST LIKE, WHY ARE YOU TALKING TO ME LIKE THAT? YOU KNOW, I WAS... I WAS JUST UPSET BECAUSE HE HAD PUT A DENT IN MY CAR AND ACTED LIKE IT WAS NO BIG DEAL AND WHATEVER, SO....

Q: DID HE GRAB THE KEYS (CAR) FROM YOU AT ONE POINT?

A: YEAH, I PULLED BACK AROUND TO HIS AUNT'S HOUSE AND PARKED. I WAS TELLING HIM TO GET OUT. I SAID, "JUST STAY HERE. I'M GOING TO GO HOME. YOU NEED TO STAY HERE".

AND HE WAS, LIKE, "NO, YOU'RE NOT LEAVING ME HERE." AND HE REACHED OVER THE PASSENGER SEAT, GRABBED THE KEYS OUT OF THE IGNITION, TOOK THEM AND GOT OUT OF THE CAR.

SO I GOT OUT OF THE CAR AND I WAS LIKE, "GIVE ME MY KEYS BACK." I TRIED TO GRAB THEM BACK AND HE, LIKE, PUSHED ME. IT WAS, LIKE A GRAVEL...DIRT... LIKE, A GRAVEL ROAD, AND I FELL AND .... BECAUSE SHE HAD A FENCE... I TRIED TO GET THE KEYS BACK, LIKE A COUPLE OF TIMES; THAT'S HOW I GOT SCRATCHES AND STUFF AND BRU... AND BRUISES ON MY LEGS. I HAD SHORTS ON. IT WAS IN AUGUST.

AND HE GOT IN THE CAR AT THAT POINT AND LOCKED THE DOORS, IN THE DRIVER'S SEAT, AND STARTED THE CAR AND LOCKED THE DOORS AND HAD JUST CRACKED THE WINDOW A LITTLE BIT AND HE WAS, LIKE, YOU KNOW, I'M .... HE SAID HE WAS LEAVING. AND I'M GOING TO LEAVE YOU STANDING THERE.

AND HE WAS...HIS WHOLE THING WAS, YOU'RE NOT GOING TO LEAVE ME STRANDED HERE. THIS IS LIKE YOUR... YOUR NEIGHBOR... LIKE, THAT'S HIS AUNT'S HOUSE. THAT'S WHERE HE HAD BEEN ALL NIGHT, YOU KNOW,

AND THEN HE ENDED UP... HE DROVE OFF. I CALLED 911, AND HE LEFT ME STANDING THERE ON THE STREET CORNER. (R.R. VOL. 4, P. 17-18)

MS. WINKLE TESTIFIED ABOUT APPELLANT BEING ARRESTED FOR AGGRAVATED ASSAULT. (R.R. VOL. 4, P. 20-21)

BOTH SIDES RESTED AND CLOSED. (R.R. VOL. 4, P. 29)

THE TRIAL COURT SET SENTENCE AT 30 YEARS. (R.R. VOL. 4, P. 31)

## POINT OF ERROR NUMBER ONE
## THE EVIDENCE IS INSUFFICIENT TO PROVE ENTRY WITHOUT THE OWNER'S EFFECTIVE CONSENT

## SUMMARY OF ARGUMENT

NO RATIONAL JURY COULD HAVE FOUND BEYOND A REASONABLE DOUBT THAT APPELLANT ENTERED MS. WINKLE'S TOWNHOUSE WITHOUT HER EFFECTIVE CONSENT.

## ARGUMENT

APPELLANT WAS CHARGED WITH BURGLARY BY AN INDICTMENT WHICH READS:

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS: THE GRAND JURY OF DALLAS COUNTY, STATE OF TEXAS, DULY ORGANIZED AT THE JANUARY TERM, A.D., 2013 OF THE CRIMINAL DISTRICT COURT NUMBER ONE, DALLAS COUNTY, IN SAID COURT AT SAID TERM, DO PRESENT ONE WILLIAMS, TOMMIE LEE JR. DEFENDANT, ON OR ABOUT THE 10TH DAY OF DECEMBER A.D., 2013 IN THE COUNTY OF DALLAS AND SAID STATE, DID INTENTIONALLY AND KNOWINGLY ENTER A HABITATION WITHOUT THE EFFECTIVE CONSENT OF

STACIE MARIE ELLIOTT WINKLE, THE OWNER THEREOF, WITH THE INTENT TO COMMIT ASSAULT AGAINST STACIE MARIE ELLIOTT WINKLE.

AND FURTHER, SAID DEFENDANT DID UNLAWFULLY, INTENTIONALLY AND KNOWINGLY ENTER A HABITATION WITHOUT THE EFFECTIVE CONSENT OF STACIE MARIE ELLIOTT WINKLE, THE OWNER THEREOF, AND DID THEN AND THERE COMMIT AND ATTEMPT TO COMMIT ASSAULT AGAINST STACIE MARIE ELLIOTT WINKLE.

AND IT IS FURTHER PRESENTED TO SAID COURT THAT PRIOR TO COMMISSION OF THE OFFENSE OR OFFENSES ABOVE, THE DEFENDANT WAS FINALLY CONVICTED OF THE FELONY OFFENSE OF POSSESSION OF A CONTROLLED SUBSTANCE 1 GRAM, IN THE CRIMINAL DISTRICT COURT NUMBER FOUR OF DALLAS COUNTY, TEXAS, IN CAUSE NUMBER F0357424, ON THE 27TH JUDICIAL DISTRICT COURT DAY OF JANUARY, 2004.

AND THAT PRIOR TO THE COMMISSION OF THE OFFENSE OR OFFENSES FOR WHICH THE DEFENDANT WAS CONVICTED AS SET OUT ABOVE, THE DEFENDANT WAS FINALLY CONVICTED OF THE FELONY OFFENSE OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DELIVER 4 GRAMS, IN THE 203RD JUDICIAL DISTRICT COURT OF DALLAS COUNTY, TEXAS, IN CAUSE NUMBER F96-48227, ON THE 31ST DAY OF AUGUST 1998.

BURGLARY IS PROSCRIBED BY TEX. PENAL CODE ANN. SECTION 30.02 WHICH READS:

(A) A PERSON COMMITS AN OFFENSE IF, WITHOUT THE EFFECTIVE CONSENT OF THE OWNER, THE PERSON:

(1) ENTERS A HABITATION, OR A BUILDING (OR ANY PORTION OF A BUILDING) NOT THEN OPEN TO THE PUBLIC, WITH INTENT TO COMMIT A FELONY, THEFT, OR AN ASSAULT; OR

(3) ENTERS A BUILDING OR HABITATION AND COMMITS OR ATTEMPTS TO COMMIT A FELONY, THEFT, OR ASSAULT.

APPELLANT ARGUES HERE THAT THE STATE FAILED TO PROVE BEYOND REASONABLE DOUBT THAT HE ENTERED THE HABITATION IN QUESTION WITHOUT CONSENT.

ON APPEAL EVIDENCE IS LEGALLY INSUFFICIENT IF, WHEN EXAMINED IN THE LIGHT MOST FAVORABLE TO THE VERDICT A RATIONAL JURY COULD NOT FIND THE ELEMENTS OF THE OFFENSE BEYOND A REASONABLE DOUBT. JACKSON V. VIRGINIA, 443 U.S. 307 (1979)

THE EVIDENCE AT TRIAL SHOWED THAT APPELLANT AND STACIE WINKLE, THE COMPLAINING WITNESS, HAD BEEN LIVING TOGETHER OFF AND ON FOR NEARLY TWO YEARS PRIOR TO THE EVENT. HOWEVER, WINKLE CLAIMED APPELLANT DID NOT LIVE WITH HER AT THE TIME IN QUESTION AND THAT HE ENTER THROUGH A WINDOW WITHOUT HER CONSENT AND PROCEEDED TO ASSAULT HER. ON THE OTHER HAND, APPELLANT'S MOTHER TESTIFIED THAT SHE KNEW "FOR A FACT" THAT APPELLANT AND MS. WINKLE LIVED TOGETHER IN DECEMBER OF 2012 BECAUSE SHE LOANED THEM HER TRUCK TO MOVE THE HOUSEHOLD.

THE RECORD CLEARLY DEMONSTRATES THAT MS. WINKLE WAS ANGRY AT APPELLANT FOR HAVING OTHER GIRLFRIENDS AND FOR NOT HELPING HER FINANCIALLY. THESE BIASES COLORED HER TESTIMONY. APPELLANT LIVED AT THE TOWNHOUSE IN QUESTION WITH MS. WINKLE AT THE TIME HE ASSAULTED HER. NO RATIONAL JURY COULD HAVE FOUND OTHERWISE.

## POINT OF ERROR NUMBER TWO

THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S OBJECTION TO THE ADMISSION OF A SURREPTITIOUS TELEPHONE CALL PLACED BY THE COMPLAINING WITNESS TO APPELLANT AT THE DIRECTION OF THE POLICE.

## SUMMARY OF ARGUMENT

THE RIGHT TO COUNSEL HAD ATTACHED AT THE TIME THE POLICE DIRECTED THE COMPLAINING WITNESS TO CALL APPELLANT TO ELICIT INCRIMINATING STATEMENTS. APPELLANT WAS HARMED BY THE ADMISSION OF THE PHONE CALL OVER HIS OBJECTION.

## ARGUMENT

APPELLANT WAS CHARGED BY INDICTMENT WITH BURGLARY. TEX. PENAL CODE ANN. SECTION 30.02 HE PLED NOT GUILTY AND TRIED THE GUILT/INNOCENCE PHASE TO A JURY. DURING ITS CASE-IN-CHIEF THE STATE MOVED TO ADMIT A RECORDING AND TRANSCRIPT OF A SURREPTITIOUS PHONE CALL MS. WINKLE MADE TO APPELLANT AT THE DIRECTION OF THE POLICE. APPELLANT OBJECTED, THE OBJECTION WAS OVERRULED, AND THE EXHIBIT WAS PUBLISHED TO THE JURY AND A TRANSCRIPT OF THE PHONE CALL WAS ADMITTED

AND PROVIDED TO THE JURY AS WELL. APPELLANT ARGUES THAT THE ADMISSION OF THIS EVIDENCE WAS ERROR AND THE ERROR WAS HARMFUL.

STACIE WINKLE IS THE COMPLAINING WITNESS IN THE INSTANT CASE. DURING DIRECT EXAMINATION SHE TESTIFIED SHE MET WITH A DETECTIVE WHO ASKED HER "TO MAKE A RECORDED PHONE CALL".

APPELLANT OBJECTED TO THE ADMISSION OF THE ONE-PARTY PHONE CALL AS FOLLOWS:

MR. EILAND: IN OUR OBJECTION, AND THE REASON FOR OUR OBJECTION, YOUR HONOR, IT'S BECAUSE WE DO BELIEVE THAT THE 6TH AMENDMENT RIGHT TO COUNSEL, IT HAS ATTACHED. AND AS FAR AS THE CASE IS CONCERNED, IT WAS A CASE THAT WAS HANDLE... THAT WAS HANDLED BY LAW ENFORCEMENT AGENCIES WITHIN DALLAS COUNTY.

NUMBER TWO: WE HAVE A VICTIM IN THE CASE... IN THIS PARTICULAR CASE THAT IS ALSO THE VICTIM IN THE ROBBERY CASE. AND WE BELIEVE THAT BOTH THOSE CASES, ALTHOUGH THEY ARE OUT OF SEPARATE TRANSACTIONS, WE BELIEVE THEY ARE CLOSE IN PROXIMITY BECAUSE DURING THE ONE-PARTY CONSENT PHONE CALL... ...

THE COURT: I THINK... OH, THEY'RE RELATED, NO QUESTION. THEY TALK ABOUT THE OFFENSE, AND WE'RE NOT ALLOWING THAT EVIDENCE. THAT'S BEEN REDACTED. I... IT'S... YOU'RE RIGHT,

THERE'S ... OR THERE'S ... THERE .. THE TWO GO HAND IN HAND WITH EACH OTHER.

MR. EIVANO: AND WE BELIEVE THAT BECAUSE INFORMATION THAT WAS ELICITED DURING THAT ONE-PARTY CONSENT CALL REGARDING THE ROBBERY CASE, WE BELIEVE THAT THE TAINTS THIS PARTICULAR ONE-PARTY CONSENT CALL BECAUSE THAT RIGHT TO COUNSEL DID ATTACH TO THAT PARTICULAR OFFENSE AND WE BELIEVE THAT IT CARRIES OVER TO THIS PARTICULAR OFFENSE AS WELL.

THE QUESTION IS WHETHER THE RIGHT TO COUNSEL ATTACHES PRIOR TO ARREST WHERE THE STATEMENTS MADE COULD BE USED AGAINST APPELLANT IN A PENDING RELATED CASE. APPELLANT ARGUES THAT THE ANSWER IS YES. AT THE TIME DETECTIVE JAY KIRBY DIRECTED MS. WINKLE TO QUESTION APPELLANT THERE WAS A PENDING ROBBERY CASE AGAINST HIM WHERE MS. WINKLE WAS THE COMPLAINING WITNESS. DURING THE PHONE CALL WINKLE ELICITED INCRIMINATING STATEMENTS ABOUT THE INSTANT CASE AND THE ROBBERY.

THE SIXTH AMENDMENT RIGHT TO COUNSEL DOES NOT APPLY UNTIL IT ATTACHES, WHICH IS WHEN THE PROSECUTION HAS COMMENCED. ROTHGERY V. GILLESPIE COUNTY, 554 U.S. 191 (2008). COMMENCEMENT OCCURS "AT FIRST APPEARANCE BEFORE A JUDICIAL OFFICER AT WHICH THE DEFENDANT IS TOLD OF THE FORMAL ACCUSATION AGAINST HIM AND RESTRICTIONS ARE IMPOSED ON HIS LIBERTY." ID., AT 194. UNDER THIS TEST THE RIGHT TO COUNSEL HAD ATTACHED IN THE ROBBERY CASE PRIOR TO THE RECORDED CONVERSATION.

THE SIXTH AMENDMENT RIGHT TO COUNSEL IS CASE SPECIFIC. IT ATTACHES ONLY TO AN OFFENSE FOR WHICH A PROSECUTION HAS BEEN INITIATED. TEXAS V. COBB, 532 U.S. 162 (2001). IN THOMPSON V. STATE, 93 S.W. 2D 16 (TEX. CRIM. APP. 2003) THE COURT OF CRIMINAL APPEALS HELD THAT THE RIGHT TO COUNSEL MAY BE VIOLATED BY ELICITATION OF EVIDENCE OF EXTRANEOUS OFFENSES IF THAT EVIDENCE COULD BE USED IN THE PROSECUTION FOR WHICH CHARGES HAD BEEN PENDING.

MOREOVER, THE SIXTH AMENDMENT VIOLATION OCCURS AT THE MOMENT THE INCRIMINATING STATEMENTS ARE ELICITED. ID. THUS, IT IS IMMATERIAL WHETHER THE STATEMENTS ARE EVER USED AT A SUBSEQUENT TRIAL. THE STATEMENTS AT ISSUE INCRIMINATED APPELLANT IN THE INSTANT CASE FOR WHICH HE ULTIMATELY WAS FORMALLY CHARGED. HOWEVER, THESE STATEMENTS WERE ALSO RELEVANT TO THE PROSECUTION AND PUNISHMENT OF PENDING ROBBERY CASE. THE COMPLAINING WITNESS IN BOTH CASES IS STACIE WINKLE. THE STATEMENTS WERE POTENTIALLY ADMISSIBLE UNDER TEX. R. EVID. 404 (B) AS WELL AS TEX. CODE CRIM. PROC. ANN. ARTICLE 38.37.

FURTHER, THE STATEMENTS WERE ADMISSIBLE PURSUANT TO TEX. CODE CRIM. PROC. ANN. ARTICLE 37.07 AT THE PUNISHMENT PHASE OF A ROBBERY TRIAL. THEREFORE, THE RIGHT TO COUNSEL THAT HAD ATTACHED IN THE ROBBERY CASE ALSO ATTACHED IN THE INSTANT CASE. THE STATEMENTS AT ISSUE ARE INADMISSIBLE AT TRIAL — AT ANY TRIAL — OF THE ACCUSED FOR ANY OFFENSE. SEE, THOMPSON V. STATE, 108 S.W. 3RD 269, 270 (TEX. CRIM. APP. 2003) (DISSENT TO REFUSAL TO GRANT RE-HEARING). THE REMAINING ISSUE IS HARM.

A TRIAL COURT'S ERRONEOUS ADMISSION OF A DEFENDANT'S STATEMENT OBTAINED IN VIOLATION OF THE SIXTH AMENDMENT IS A CONSTITUTIONAL ERROR SUBJECT TO A HARM ANALYSIS PURSUANT TO TEX.R. APP. PROC. 44.2 (A). WHERE THE RECORD REVEALS CONSTITUTIONAL ERROR REVERSAL IS REQUIRED UNLESS IT IS DETERMINED BEYOND A REASONABLE DOUBT THAT THE ERROR DID NOT CONTRIBUTE TO THE CONVICTION OR PUNISHMENT. THIS ERROR IS NOT HARMLESS BEYOND A REASONABLE DOUBT IF THERE IS A REASONABLE LIKELIHOOD THAT THE ERROR MATERIALLY AFFECTED THE JURY'S DELIBERATIONS. SEE, JONES V. STATE, 114 S.W. 3RD 766 (TEX. CRIM. APP. 2003). THE APPLICABLE ANALYSIS ASKS WHETHER ~~THE~~ ADMISSION OF THE STATEMENT CONTRIBUTED TO THE VERDICT REGARDLESS OF WHETHER THERE IS INDEPENDENT EVIDENCE SUFFICIENT TO SUSTAIN THE VERDICT OF GUILT. ID.

A DEFENDANT'S STATEMENT IMPLICATING HIMSELF IN THE COMMISSION OF THE OFFENSE IS UNLIKE ANY OTHER EVIDENCE THAT CAN BE ADMITTED AGAINST THE DEFENDANT. SEE, ARIZONA V. FULMINANTE, 449 U.S. 279 (1991). "A DEFENDANT'S CONFESSION IS PROBABLY THE MOST DAMAGING EVIDENCE ADMITTED AGAINST HIM. CERTAINLY CONFESSIONS HAVE A PROFOUND IMPACT ON THE JURY, SO MUCH THAT ~~WE~~ WE MAY JUSTIFY ITS ABILITY TO PUT THEM OUT OF MIND EVEN IF TOLD TO DO SO." ID.

MOREOVER, IF THE JURY BELIEVES THE DEFENDANT ADMITTED THE CRIME, IT WILL DOUBTLESS BE TEMPTED TO REST ITS DECISION ON THAT EVIDENCE ALONE, WITHOUT CAREFUL CONSIDERATION OF THE OTHER EVIDENCE IN THE CASE." ID. AT 313. THE FOCUS THEN, IS ON THE INTEGRITY OF THE PROCESS. HARRIS V. STATE, 790 S.W. 2D 568 (TEX. CRIM. APP. 1989).

IN THE INSTANT CASE APPELLANT ADMITTED TO MS. WINDLE THAT HE ENTERED THE APARTMENT AND CHOKED HER. HE EVEN JUSTIFIED HIS CONDUCT AS BEING THE PRODUCT OF ANGER. IT CAN NOT BE ARGUED THAT THIS EVIDENCE DID NOT CONTRIBUTE TO THE VERDICT. IN FACT THESE STATEMENTS PROBABLY DECIDED THE VERDICT. HARM IS SHOWN.

## POINT OF ERROR NUMBER THREE

THE TRIAL COURT ERRED BY FAILING TO LIMIT THE DEFINITIONS OF INTENTIONALLY AND KNOWINGLY TO THE RELEVANT CONDUCT ELEMENTS OF THE UNDERLYING OFFENSE

## SUMMARY OF ARGUMENT

BURGLARY IS A NATURE OF AND CIRCUMSTANCES SURROUNDING CONDUCT OFFENSE. THE TRIAL COURT COMMITTED ERROR BY FAILING TO LIMIT THE DEFINITIONS OF INTENTIONALLY AND KNOWINGLY TO ITS PERTINENT CONDUCT ELEMENT. THE ERROR RESULTED IN EGREGIOUS HARM.

## ARGUMENT

APPELLANT WAS CHARGED WITH BURGLARY BY
AN INDICTMENT WHICH READS:

IN THE NAME AND BY THE AUTHORITY OF THE
STATE OF TEXAS: THE GRAND JURY OF DALLAS
COUNTY, STATE OF TEXAS, DULY ORGANIZED AT
THE JANUARY TERM, A.D., 2013 OF THE CRIMINAL
DISTRICT COURT NUMBER ONE, DALLAS COUNTY,
IN SAID COURT AT SAID TERM, DO PRESENT
THAT ONE WILLIAMS, TOMMIE LEE JR. DEFENDANT,
ON OR ABOUT THE 10TH DAY OF DECEMBER A.D.,
2013 IN THE COUNTY OF DALLAS AND SAID
STATE, DID INTENTIONALLY AND KNOWINGLY ENTER
A HABITATION WITHOUT THE EFFECTIVE CONSENT OF
STACIE MAME ELLIOTT WINKLE, THE OWNER THEREOF,
WITH THE INTENT TO COMMIT ASSAULT AGAINST
STACIE MAME ELLIOTT WINKLE,

AND FURTHER, SAID DEFENDANT DID UNLAWFULLY,
INTENTIONALLY AND KNOWINGLY ENTER A HABITATION
WITHOUT THE EFFECTIVE CONSENT OF STACIE
MAME ELLIOTT WINKLE, THE OWNER THEREOF, AND
DID THEN AND THERE COMMIT AND ATTEMPT TO

COMMIT ASSAULT AGAINST STACIE MARIE ELLIOTT
WINKLE,

AND IT IS FURTHER PRESENTED TO SAID COURT
THAT PRIOR TO COMMISSION OF THE OFFENSE OR
OFFENSES ABOVE, THE DEFENDANT WAS FINALLY
CONVICTED OF THE FELONY OFFENSE OF POSSESSION OF
A CONTROLLED SUBSTANCE 1 GRAM, IN THE CRIMINAL
DISTRICT COURT NUMBER FOUR OF DALLAS COUNTY,
TEXAS, IN CAUSE NUMBER F0357421, ON THE 27TH
JUDICIAL DISTRICT COURT DAY OF JANUARY, 2004,

AND THAT PRIOR TO THE COMMISSION OF THE OFFENSE
OR OFFENSES FOR WHICH THE DEFENDANT WAS CONVICTED
AS SET OUT ABOVE, THE DEFENDANT WAS FINALLY
CONVICTED OF THE FELONY OFFENSE OF POSSESSION
OF A CONTROLLED SUBSTANCE WITH INTENT TO DELIVER
4 GRAMS, IN THE 203RD JUDICIAL DISTRICT COURT OF
DALLAS COUNTY, TEXAS, IN CAUSE NUMBER F96-48227,
ON THE 31ST DAY OF AUGUST 1998.

( C.R. P 7)

TEX. PENAL CODE ANN, SECTION 30.02 (A) (3).

THE TRIAL COURT INSTRUCTED THE JURY PURSUANT TO TEX. PENAL CODE ANN. SECTION 6.03 AS FOLLOWS:

A PERSON ACTS INTENTIONALLY, OR WITH INTENT, WITH RESPECT TO THE NATURE OF HIS CONDUCT OR TO A RESULT OF HIS CONDUCT WHEN IT IS HIS CONSCIOUS OBJECTIVE OR DESIRE TO ENGAGE IN THE CONDUCT OR CAUSE THE RESULT.

A PERSON ACTS KNOWINGLY, OR WITH KNOWLEDGE, WITH RESPECT TO THE NATURE OF HIS CONDUCT WHEN HE IS AWARE OF THE NATURE OF HIS CONDUCT. A PERSON ACTS KNOWINGLY, OR WITH KNOWLEDGE, WITH RESPECT TO A RESULT OF HIS CONDUCT WHEN HE IS AWARE THAT HIS CONDUCT IS REASONABLY CERTAIN TO CAUSE THE RESULT.

A CONDUCT ELEMENT IS THAT ELEMENT OF THE OFFENSE THAT MAKES THE DEFENDANT'S CONDUCT PROSCRIBABLE. THE TEXAS PENAL CODE IDENTIFIES THREE CONDUCT ELEMENTS THAT MAY BE IMPLICATED IN A GIVEN CRIME: (1) THE NATURE OF THE CONDUCT; (2) THE RESULT OF THE CONDUCT; AND (3) THE CIRCUMSTANCES SURROUNDING THE CONDUCT. SEE, TEX. PENAL CODE ANN. SECTION 6.03; COOK V. STATE. 884 S.W. 2D 485 (TEX. APP. 1994).

TEXAS COURTS REQUIRE THAT, IN THE CHARGE TO THE JURY, THE INTENTIONALLY AND KNOWINGLY REQUIREMENTS BE CONFINED TO THE SPECIFIC CONDUCT ELEMENT REQUIRED TO PROVE THE ALLEGED OFFENSE. ASH V. STATE, 930 S.W. 2D 192 [TEX. APP.— DALLAS 1996). TEX. PENAL CODE ANN. SECTION 30.02 (a) (3) PROVIDES:

(A) A PERSON COMMITS AN OFFENSE, IF WITHOUT THE EFFECTIVE CONSENT OF THE OWNER, THE PERSON:

(3) ENTERS A BUILDING AND COMMITS [S] THEFT [.]

TEXAS COURTS HAVE READ THIS PROVISION TO INDICATE THE FACT THAT THE REQUIRED MENTAL STATES ATTACHES TO THE ACT OF ENTRY IS AN INDICATOR THAT THIS ACT WAS INTENDED TO BE THE GRAVAMEN OF THE OFFENSE. HUFFMAN V. STATE, 267 S.W. 3RD 902 (TEX. CRIM. APP. 2008). THERE THE COURT SAID THE FACT THAT THE LEGISLATURE REQUIRED THE CULPABLE MENTAL STATE TO ATTACH TO A PARTICULAR CIRCUMSTANCE AND NOT A PARTICULAR RESULT OR A PARTICULAR NATURE OF CONDUCT INDICATED THAT THE CIRCUMSTANCE WAS THE

GRAVAMEN OF THE OFFENSE. THE STATE'S FOCUS ON ENTRY IS ALSO CHARACTERIZING BURGLARY AS A CRIME AGAINST PROPERTY WHOSE "HARM RESULTS FROM THE ENTRY ITSELF". RICHARDSON V. STATE, 888 S.W. 2D 822 (TEX. CRIM. APP. 1994). FROM THESE CASES IT IS APPARENT THAT BURGLARY IS A NATURE OF CONDUCT (ENTRY) AND CIRCUMSTANCES SURROUNDING CONDUCT (WITHOUT THE OWNER'S EFFECTIVE CONSENT) OFFENSE. IT IS NOT A RESULT OF CONDUCT OFFENSE. APPELLANT THEREFORE CHALLENGES THE TRIAL COURT'S FAILURE TO PROPERLY LIMIT THESE TWO DEFINITIONS TO THEIR PERTINENT CONDUCT ELEMENTS. A CORRECT JURY CHARGE WOULD STATE:

THE FOLLOWING DEFINITION APPLIES TO THE MENTAL STATE IN ENTERING THE BUILDING; A PERSON ACTS INTENTIONALLY OR WITH INTENT WITH RESPECT TO THE NATURE OF HIS CONDUCT WHEN IT IS HIS CONSCIOUS OBJECTIVE OR DESIRE TO ENGAGE IN THE CONDUCT.

THE FOLLOWING DEFINITION APPLIES TO THE KNOWING MENTAL STATE: A PERSON ACTS KNOWINGLY, OR WITH RESPECT TO THE NATURE OF HIS CONDUCT WHEN HE IS AWARE THE CIRCUMSTANCES EXIST.

SEE. HUGHES V. STATE, 897 S.W. 2D 285 (TEX. CRIM. APP. 1994).

FAILURE TO PROPERLY LIMIT THE DEFINITIONS OF MENTAL STATES CONSTITUTES ERROR. PATRICK V. STATE, 906 S.W. 2D 192 (TEX. APP. — DALLAS 1996). THE NEXT STEP IS TO DETERMINE THE EXISTENCE OF HARM. WHERE THERE WAS NO TRIAL OBJECTION, AS HERE, THE ERROR MUST HAVE SO HARMED. WHERE THERE WAS NO TRIAL OBJECTION, THE DEFENDANT THAT HE WAS DENIED A FAIR TRIAL AS A RESULT OF THE ERROR. ALMANZA V. STATE, 686 S.W. 2D 157 (TEX. CRIM. APP. 1984). THE HARM MUST BE FOUND TO BE EGREGIOUS. A REVIEWING COURT MUST LOOK AT THE ENTIRE CHARGE TO DETERMINE IF THE HARM MEETS THIS HIGH STANDARD. ID. OTHER FACTORS TO CONSIDER ARE THE STATE OF THE EVIDENCE, INCLUDING THE CONTESTED ISSUES, ARGUMENTS OF COUNSEL, AND ANY OTHER RELEVANT EVIDENCE.

IN THE INSTANT CASE THE APPLICATION PARAGRAPH, AUTHORIZING CONVICTION, APPLIED THESE DEFINITIONS IN ONLY GENERAL TERMS, THUS DOING NOTHING TO ALLEVIATE THE HARM CAUSED BY THE ABSTRACT PARAGRAPH. HARM IS SHOWN.

POINT OF ERROR NUMBER FOUR

THE TRIAL COURT LACKED JURISDICTION TO HEAR THE
INSTANT CASE AND RENDER A JUDGEMENT BECAUSE
THE CASE WAS NOT TRANSFERRED TO ITS DOCKET

## SUMMARY OF ARGUMENT

THE 282ND DISTRICT COURT HAD NO JURISDICTION OVER THIS
CASE. ITS JUDGEMENT IS VOID.

## ARGUMENT

THE TEXAS CONSTITUTION PROVIDES THAT A COURT IS VESTED
WITH JURISDICTION OVER A CRIMINAL CASE BY THE PRESENTMENT
OF AN INDICTMENT OR INFORMATION. TEX. CONST. ART. V SECTION
12 (B). AN INDICTMENT IS PRESENTED WHEN IT HAS BEEN DULY
ACTED ON BY THE GRAND JURY AND RECEIVED BY THE TRIAL COURT.
TEX. CODE CRIM. PROC. ANN. ARTICLE 12.06. STATUTORY PROVISIONS
ALSO CODIFY THE NECESSARY RESULT, IMPLIED BY ARTICLE V SECTION
12 ABOVE THAT THE TRIAL COURT LACKS JURISDICTION IN THE
ABSENCE OF PROPER PRESENTMENT. TEX. CODE CRIM. PROC. ANN. ARTICLE
32.01. (REQUIRING AN INDICTMENT TO BE DISMISSED IF NOT
PRESENTED TO THE TRIAL COURT BY DATE CERTAIN). ONCE THE
INDICTMENT IS PRESENTED JURISDICTION IS EXCLUSIVE IN THE
RECEIVING COURT UNLESS IT IS TRANSFERRED TO ANOTHER COURT.
TEX. CODE CRIM. PROC. ANN ARTICLE 4.16. THE ONLY
MECHANISM FOR TRANSFERRING THE POWER TO TRY A FELONY
IS BY AN ORDER OF TRANSFER COMBINED WITH AN ORDER OF
RECEIVING. COMBINED, THESE CONSTITUTE A WRITTEN AGREEMENT
BETWEEN THE TWO COURTS INVOLVED. THE TRANSFERRING COURT
ISSUES AN ORDER FORMALLY TRANSFERRING JURISDICTION OVER
THE CASE. THE SECOND COURT ACCEPTS THE CASE BY ISSUING A
FORMAL ORDER RECEIVING. SEE TEX. GOVT. CODE ANN SECTION 24.003.

THE INSTANT CASE WAS PRESENTED TO CRIMINAL DISTRICT COURT
NUMBER ONE OF DALLAS COUNTY, TEXAS. JURISDICTION WAS THUS
INVESTED IN THAT COURT. THE INSTANT CASE LATER APPEARED ON
THE 282ND DISTRICT COURT WHERE IT REMAINED THROUGH THE ENTRY
OF JUDGEMENT. HOWEVER, THERE IS NOTHING IN THE RECORD SHOWING
THAT JURISDICTION WAS EVER TRANSFERRED BY CRIMINAL DISTRICT

COUNT NUMBER ONE TO THE 282ND DISTRICT COURT. THEREFORE IT APPEARS THAT THE CRIMINAL DISTRICT COURT NUMBER ONE "RETAINS" JURISDICTION, JUST AS ARTICLE 4.16 STATES. APPELLANT CONTENDS THAT THE 282ND DISTRICT COURT NEVER ACQUIRED JURISDICTION IN THIS MATTER.

LACK OF JURISDICTION OVER A CASE RENDERS A TRIAL COURT'S JUDGEMENT VOID. EX PARTE SEIDEL, 39 S.W. 3RD 221 (TEX. CRIM. APP. 2001); HOANG V. STATE, 872 S.W. 2D 694 (TEX. CRIM. APP. 1993). A DEFECT WHICH RENDERS A SENTENCE VOID MAY BE RAISED FOR THE FIRST TIME OF APPEAL. HEATH V. STATE, 817 S.W. 2D 335 (TEX. CRIM. APP. 1991).

THE RIGHT TO BE TRIED IN A COURT THAT HAS PROPERLY ACQUIRED JURISDICTION OVER A CASE IS ABSOLUTE. SEE, MARIN V. STATE, 851 S.W. 2D 275 (TEX. CRIM. APP. 1993). SUCH A RIGHT TO CANNOT BE WAIVED OR FORFEITED, EVEN WITH CONSENT. ID. IMPLEMENTATION IS NOT OPTIONAL, IT IS ALWAYS REQUIRED. ID AT 279. ERROR IN THIS NOT SUBJECT TO FURTHER ANALYSIS. THUS, A DEFENDANT MAY COMPLAIN ABOUT THIS VIOLATION OF AN ABSOLUTE RIGHT ON APPEAL WITHOUT HAVING RAISED THE QUESTION IN THE TRIAL COURT. ID. AT 280.

APPELLANT NOW COMPLAINS THAT THE 282ND DISTRICT COURT NEVER ACQUIRED JURISDICTION OVER THE INSTANT CASE, BUT HE ACKNOWLEDGES THAT AUTHORITY IS AGAINST HIS POSITION. SEE, E.G., MILLS V. STATE, 742 S.W. 2D 832, 835 (TEX. APP. — DALLAS 1987); GARCIA V. STATE, 901 S.W. 2D 731, 732-733 (TEX. APP. – HOUSTON [14TH. DIST.] 1995). THESE CASES ALL HOLD THAT THE PRESENT ISSUE MUST BE RAISED THE TRIAL COUNSEL OR IT IS WAIVED. HOWEVER, THEY SIMPLY CITE TO THEIR ANTECEDENTS WITHOUT ANY CONSTITUTIONAL OR STATUTORY AUTHORITY FOR THE PROPOSITION THAT A JURISDICTION DEFECT CAN BE CURED BY PROCEDURAL DEFAULT.

## PRAYER

WHEREFORE PREMISES CONSIDERED, APPELLANT PRAYS THAT THIS HONORABLE COURT REVERSE AND REMAND THIS CAUSE TO THE TRIAL COURT FOR FURTHER PROCEEDINGS

RESPECTFULLY SUBMITTED:

TOMMIE L. WILLIAMS II
#1937981
ROBERTSON UNIT
12071 FM 3522   ABILENE, TX. 79601